THE STATE OF IOWA, Appellee, v. CHARLES MILLER, Appellant.

1. **Robbery**: FORCE NECESSARY: EVIDENCE: INSTRUCTIONS. The defendant was indicted for the crime of robbery by means of putting in fear one G., and taking with force and violence, while armed with a dangerous and deadly weapon, a jug containing whiskey from the person of said G. The evidence tended to show that, while the defendant and G. were riding together in a hack, with the jug of whiskey belonging to G. resting on the floor of the hack near them, nor secured in any manner, and while G.'s attention was diverted, and without any resistance from him, the defendant seized the jug, leaped with it from the hack, and ran back towards the town from whence the hack had come. He was followed by G., and was overtaken after running a short distance, and after he had thrown the jug over a fence. The evidence was conflicting as to what then took place, G. claiming that the defendant, with knife in hand, compelled him to surrender the jug by threats of great bodily injury, and then carried it away; while the defendant claimed that while the jug rested on the fence in the hands of G. the latter turned to look to see some one who had called, and released his hold, and at that moment the defendant took the jug and carried it away. The court refused to instruct the jury, at the request of the defendant, that "if, at the time the defendant took the jug, the said Graham was looking out of the hack at some other object, and did not have hold of it, and it was setting on the bottom of the hack, not attached to his person, and no other force or violence was used by the defendant than merely to take hold of the jug and carry it away without the knowledge of said Graham," this would not constitute the crime of robbery. *Held*, that the instruction should have been given.

2. ———: ACTS WHICH ARE PARTS OF SAME TRANSACTION. The acts of the defendant at the hack and at the fence being so closely connected as to partake of the nature of a single transaction, *held*, that it was proper for the jury to consider the two transactions together in determining whether the defendant was guilty as charged.

*Appeal from Monroe District Court.*—HON. E. L. BURTON, Judge.

THURSDAY, JUNE 4, 1891.

THE defendant was indicted for the crime of robbery, convicted and adjudged to be imprisoned in the penitentiary at Ft. Madison for the term of one year. From that judgment he appeals.—*Reversed.*

*T. B. Perry*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

ROBINSON, J.—The indictment charges, in substance and effect, that the defendant committed the crime of robbery on the twenty-fifth day of August, 1890, by means of putting in fear one James Graham, and by taking with force and violence, while armed with a dangerous and deadly weapon, a jug containing whiskey from the person of said Graham. It appears that on the day named Graham obtained, at the express office in Albia, a jug containing whiskey. He and the defendant thereupon drank of its contents, and continued to do so until both were somewhat intoxicated. After spending several hours in town, they got into a passenger hack with others to go to a place called Cedar. The jug, then containing about one quart of whiskey, was placed on the bottom of the hack near them. As the hack was being driven out of Albia, Graham's attention was attracted to the front end by the act of the driver in putting on the brake at the top of a hill. While Graham's attention was thus diverted, the defendant seized the jug, leaped with it from the hack, and ran back towards town. He was followed by Graham, and overtaken, after running a short distance. Just before he was overtaken the defendant threw the jug over a fence and stopped. Graham came up, got over the fence, picked up the

jug, and drank from it.  As to what else occurred at the fence there is conflict in the evidence, Graham and the defendant alone testifying to it.  Graham claims that the defendant was holding in his hand a knife, which seems to have been a dangerous weapon; that he drank by direction of the defendant, and was then compelled to surrender the jug by threats of great bodily injury, made by the defendant, who then carried off the jug and its contents, and appropriated them to his own use.  The defendant admits that he held the knife, but claims that it was in his vest pocket, and that he took it in his hand while running to prevent losing it.  He denies the alleged threats, and says that when Graham picked up the jug he drank from it, and, placing it on the fence, told the defendant to drink; that at that moment some one called, and Graham, turning to see who it was, released his hold on the jug; and that the defendant then took and carried it away.

I.   There was evidence which tended to show, and the jury would have been authorized to find, that, when the defendant first seized the jug, it was standing on the bottom of the hack between two seats, and that it was not in contact with Graham, nor secured in any manner; that the only force exerted by the defendant in taking it was that required to lift and carry it away; that Graham's face was turned from the jug and the defendant, and that he had no knowledge of the taking until after it had been accomplished, and did not resist it.   In that condition of the case the defendant asked the court to instruct the jury as follows:  "If, at the time the defendant took the jug, the said Graham was looking out of the hack at some other object, and did not have hold of it, and it was setting on the bottom of the hack, not attached to his person, and no other force or violence was used by the defendant than

*1. ROBBERY: force necessary: evidence: instructions.*

merely to take hold of the jug and carry it away without the knowledge of said Graham, this does not constitute the crime of robbery." The court refused to give the instruction asked, and failed to charge the jury in regard to the matter contained in the instruction refused. It is true the jury were told, somewhat in the language of the statute, that to constitute the crime of robbery, the taking must have been accomplished by putting in fear, force or violence, but they were left to infer, and that seems to have been the theory of the instructions, that no force or violence, other than that required to remove the jug without resistance, was required to constitute the crime of robbery. It is not claimed that Graham was put in fear at the hack. In our opinion, the jury should have been instructed substantially as asked by the defendant. The common-law definitions of the crime of "robbery" show that it includes the taking of property from the person of one by means of putting him in fear, or by means of force or violence. 2 Bishop on Criminal Law, sec. 1156, and note 1; 1 Wharton on Criminal Law, sec. 846. The provisions of section 3858 of the Code are in harmony with those definitions. In *Fanning v. State*, 66 Ga. 167, it was held, that where the thief slipped his hand into a lady's pocket, and furtively took therefrom a purse of money, but before he had removed the purse entirely from the pocket he was discovered, and in removing his hand and the purse the pocket was torn, defendant was guilty of larceny from the person, and not of robbery. See also *State v. John*, 5 Jones (N. C.) 163, in which it was held that the criminal taking of money from the person of another during a scuffle was not robbery. In *Brennon v. State*, 25 Ind. 403, it was held that the taking of pocket-books from the person of one who was in an unconscious state, the result of intoxication, was not robbery, although the pockets from which the property was taken were turned inside

out in the transaction. As to whether the mere snatching of property from the person of the owner with criminal intent is the using of force or violence required to constitute the crime of robbery, the authorities are not agreed, many holding that it is not. 1 Wharton on Criminal Law, sec. 854; 2 Bishop on Criminal Law, sec. 1167. In this state the question has been decided in the affirmative. *State v. Carr*, 43 Iowa, 418, 423. The rule in regard to such snatching is stated as follows: "The true doctrine is that the snatching will be robbery if the article is so attached to the person or clothes as to create a resistance, however slight; not otherwise." 2 Bishop on Criminal Law, sec. 1167.

It is said that "a taking in the presence of an individual [of course, there being a putting in fear] is to be deemed a taking from the person" (2 Bishop on Criminal Law, sec. 1178); and that is substantially the doctrine announced by this court in *State v. Calhoun*, 72 Iowa, 432, 435. But the rule which seems to have been adopted by the district court, and which is, in effect, that the crime of robbery can be committed where there is no putting in fear and no resistance, without the use of any force or violence other than that required to take and remove the property, has no support in any of the authorities to which our attention has been called. As a rule, larceny of the simplest character cannot be committed without the use of the amount of force or violence stated. Section 3905 of the Code provides for the punishment of the crime of larceny from the person. That offense cannot be committed, however, if it be true that a mere taking of the property, which is not in any manner resisted, and which is not accomplished by putting in fear, when the force or violence employed is merely that required to remove the property. In our opinion, the force and violence required to constitute the crime of robbery must be designed not merely to

take the property stolen, if there be no resistance, but to prevent or overcome resistance to the taking; and, in most cases, to operate upon or against the person of the one who is robbed. The affair at the hack, if all that Graham claims in regard to it be true, was, at most, larceny from the person, and not robbery, and the jury might well have found that it was only larceny. The court should not only have given the substance of the instruction asked, and which we have quoted, but it should have modified the charge given so as to express the law as we have stated it. It cannot be said the failure of the court to instruct the jury correctly in regard to the affair at the hack was error without prejudice, for the reason that there was conflict in the testimony as to what occurred at the fence, and it cannot be known what the jury found the facts to be.

II. The appellant complains that the charge of the court authorized the jury to find him guilty as charged in the indictment, if the claims of the state in regard to what took place at either the hack or the fence was supported by the evidence. In that we think there was no error. While it is true that the state claimed that the crime of robbery was committed at the hack, and also at the fence, yet the two transactions were so closely connected, and partook so much of the nature of a single transaction, that it was proper to consider them together.

2. ——: acts which are parts of same transaction.

III. What we have said disposes of all the objections discussed by counsel for the appellant which need to be specially considered. The charge of the court, excepting in so far as it is in conflict with the conclusions we have stated, seems to be correct and warranted by the record. Some of the questions discussed are not liable to arise on another trial.

For the errors indicated the judgment of the district court is REVERSED.