STATE OF IOWA, Appellee, v. HARRISON B. LEWIS, Appellant.

ROBBERY: Assault With Intent to Rob—Elements of "Assault"—

1 Evidence. One is guilty of an assault who makes active preparation to do unlawful corporal violence to another and, with the ability and intent to immediately apply such violence, does some overt act indicative of such intent. Such overt act is necessary, but *direct attempt* at violence is not necessary.

PRINCIPLE APPLIED: An accused, late at night, entered a room and found the occupant asleep. The accused removed his shoes and, armed with a billy in one hand and a loaded revolver in the other, stealthily approached the cot and, without touching the person of the sleeping man, reached under the pillow in search of money. The sleeping man awoke and sprang to his feet, and the accused instantly fled. The accused claimed that the weapons were intended to ''bluff'' the sleeper if he awoke and made an attack, but there was direct evidence that the accused stated to a confederate that he (the accused) intended to hit the sleeping man. *Held* to constitute a definite menace of violence toward the sleeping man and to justify the conviction of an accomplice of *assault* with intent to rob.

**ROBBERY: Assault With Intent To Rob—Absence of Assault in At-**
2 **tempt—Subsequent Assault to Escape—Effect.** If the element of ''assault'' is absent in the actual attempt to commit an offense, such element is not supplied by a later assault committed by the accused, after being discovered and *in an attempt to escape*.

PRINCIPLE APPLIED: (Additional to No. 1.) In the attempt to escape, the accused either fell down or was knocked down, and the man whose money the accused had attempted to get tried to hold him. A confederate hit the man who was holding the accused, and the confederate and the accused escaped. *Held,* this latter assault would not supply the absence of an assault in the effort to get the money (assuming, *arguendo,* that there was such absence).

**ROBBERY: Assault With Intent to Rob—Elements of Offense—Trial**
3 **—Instructions.** An instruction in a prosecution for assault with intent to rob which omits all reference to the elements of ''force or intimidation'' is fundamentally erroneous.

*Appeal from Jefferson District Court.*—D. M. ANDERSON, Judge.

TUESDAY, OCTOBER 19, 1915.

REHEARING DENIED JANUARY 21, 1916.

THE defendant was convicted of assault with intent to rob, and appeals.—*Reversed.*

*James A. Devitt* and *Charles D. Leggett,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, for appellee.

LADD, J.—I. In the evening of May 22, 1914, Harold Tropp and Edwin M. Cox went to the Court Hotel in Fairfield, where they observed the proprietor, Dunlevy, asleep on a cot in a back room. Tropp took off his shoes and, armed with a leather sap and a loaded revolver, moved quietly to the head of the cot, when Dunlevy, feeling the presence of someone in the room, sprang to his feet. Tropp ran out, with Dunlevy after him. He stumbled or was knocked down, and Dunlevy undertook to hold him, when Cox, who had waited in the wash room, struck Dunlevy with a lead pipe and both escaped. Dunlevy testified that no one had touched or tried to take anything from his person. Tropp, who had pleaded guilty, swore that he did not speak to or touch Dunlevy, but that he "made a movement under his pillow and he jumped".

1. ROBBERY: assault with intent to rob: elements of "assault": evidence.

"Q. You were trying to sneak the money from under his pillow without waking him up? A. Yes, sir. Q. And just the minute he waked up you took to your heels? A. Yes, sir. ´. . . Q. Did you have any intention at the time to get something if you had to take it away by force? A. No, I don't believe I did. Q. What were you doing with the gun and billy? A. Just a bluff. Q. Your object was to scare? A. The gun was there for a bluff. I was to get the money without waking him. . . . Q. I will ask you whether or not you did have any intention of scaring the money out of Mr. Dunlevy? A. We went in there and when we seen he was asleep, that is the way that we were going to get the money. I had no—the gun was for a bluff. Q. For a bluff to whom? A. To Dunlevy if he attacked me."

Cox testified:

"When we went in there, Tropp went in to hit him and get the money. Q. Do you know what Harold's intention was? A. He intended to hit him. Q. He had a pocket billy and a revolver? A. Yes, sir. Q. He said his intention was to get the man's money? A. Yes, sir."

This is all the evidence bearing on the commission of the offense charged, and it is contended on the part of the defendant that it was insufficient to warrant a finding that Tropp was guilty of an assault with intent to rob; and therefore that Lewis, who was accused of having aided and abetted him therein, should have been acquitted. The charge is assault with intent to commit the crime of robbery. That offense is defined in the statute, in substance, as at common law, in declaring that "If any person, with force or violence, or by putting in fear, steal and take from the person of another any property that is the subject of larceny, he is guilty of robbery." Sec. 4753, Code.

"If any person assault another with intent to   .   .   . rob, steal   .   .   . he shall be" punished as prescribed. Sec. 4770, Code.

Robbery differs from larceny from the person in that the taking in the former must be by force or intimidation; while in the latter, this is not necessary. *State v. Miller,* 83 Iowa 291. Larceny from the person is included in the crime of robbery. *State v. Reasby,* 100 Iowa 231. And this being so, assault with intent to steal also is included within the offense charged in the indictment. The evidence leaves no doubt that Tropp slipped stealthily into the room to the head of the cot, with the design of stealing money from beneath Dunlevy's pillow. But this alone would not be enough to constitute the crime charged; there must have been an assault. This has been defined often, but ordinarily with reference to the facts under consideration. The definition found in 3 Cyc. 1020, seems comprehensive and accurate:

"An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect." *State v. Cody,* 94 Iowa 169; *Tarver v. State,* 43 Ala. 354; *People v. Lilley,* 43 Mich. 521.

It has been described as inchoate violence with the person

of another, with present means of carrying the intent into effect. The intent is of the essence of the offense, and it is to be ascertained from the circumstances of each case. *Richels v. State,* 1 Sneed (Tenn.), 606. The authorities agree that there must be an attempt or offer to apply force to another, in addition to such intention, and the present means to give it effect. *Haupt v. Swenson,* 125 Iowa 694.

Here Tropp had the means in his hands and, as said, might have entertained the purpose to use them in the contingency that it became necessary to do so in taking the money or in effecting his escape therewith. If he "made a movement under the pillow", it was solely for the purpose of obtaining the money, and without intention to touch or injure Dunlevy in any manner; and therefore, this could not be said to constitute an assault. *Commonwealth v. Ordway,* 66 Mass. 270; *Hall v. People,* (Ill.) 49 N. E. 495. The force in robbery is that necessary to overcome resistance or overcome the person robbed, and this movement had no connection with

2. ROBBERY: assault with intent to rob: absence of assault in attempt: subsequent assault to escape: effect.

either. Striking him with the lead pipe was an assault, but not in the perpetration of the offense undertaken. Tropp then had abandoned his purpose to rob or steal and was trying to make his escape, and Cox used the lead pipe merely to enable him to effect his escape. Had Tropp obtained money from beneath the pillow and had the lead pipe been used to enable him to retain it and carry it away, a different question would have been presented, and one upon which the authorities are not agreed. As what was done by Cox was after the intent to rob or steal had been abandoned, it could not have preceded or been concomitant with the undertaking to steal the money, and this is held essential, by the great weight of authority. *Thomas v. State,* 91 Ala. 34 (9 So. 81); *Hanson v. State,* 43 Ohio 376 (1 N. E. 136); 24 Am. & Eng. Encyc. of Law (2d Ed.) 996.

The mere fact that the attempt or endeavor to do violence is connected with a condition will not shield the accused.

*State v. Mitchell*, 139 Iowa 455. To amount to an attempt or endeavor essential to an assault, an act indicative of the intent is essential; for a man may intend what he will, so long as he does nothing towards carrying it out. *State v. Thompson*, 133 Iowa 741. If there is some distinct movement, violent in its nature, towards the victim and involved in the perpetration of the offense, such movement would seem sufficient to constitute an assault to commit. Quoting from 2 Bishop's New Crim. Law, Sec. 1169, in defining what is essential in robbery: "An assault which has not traveled to a battery, or probably any such array of force as is calculated to create the reasonable apprehension, though short of a technical assault, suffices." See *State v. Gorham*, 55 N. H. 152. Thus, enticing a girl under ten years of age to a loft, with the purpose of ravishing her, was held, in *Hays v. People*, 15 N. Y. Com. Law (1 Hill) 351, to warrant a finding that the accused was guilty of an assault with intent to commit rape; for, having the child in his power and within his reach, he exerted means to accomplish meditated violence on her person, the court saying:

"There need not be even a direct attempt at violence; but any indirect preparation towards it, under the circumstances mentioned, such as drawing a sword or bayonet, or even laying one's hand upon his sword, would be sufficient."

It was said in *State v. Smith*, 80 Mo. 516, that "An assault with intent may exist without the actual attempt. *Regina v. Dungey*, 4 F. & F. 102, and note. There need not be a direct attempt at violence, but indirect preparation toward it will, in certain circumstances, constitute an assault"; citing treatises and the above case, with *Carter v. State*, 35 Ga. 263.

Advancing upon another with open knife, using violent and menacing expressions, was held to constitute an assault, in *State v. Shipman*, 81 N. C. 513. Four persons with pitchforks and guns on their shoulders, following another and using threatening and insulting language which put him in fear and induced him to go home, even though not nearer

than seventy-five yards, were held guilty of an assault, in *State v. Rawles,* 65 N. C. 334. See *State v. Martin,* 85 N. C. 508 (39 Am. Rep. 711), where the accused advanced on the opposite side of the street with a stick and open knife, threatening to kill, and was held to be guilty of an assault. In *Higginbotham v. State,* 23 Tex. 574, the accused, getting into an altercation with one Bennett, "got up from his seat, took a gun down from the rack", when one of the witnesses, immediately and before he had turned around, seized hold of him and prevented him from any further use of it. The question was whether the mere act of getting the gun down, under the circumstances, might have been found an attempt to commit a battery; or must there have been some further act, as cocking, or the like essential? The court held the evidence sufficient, saying, among other things:

"The law has not established, as a criterion in determining an attempt, that the gun must be presented or aimed, or the lock pulled back, or triggers of a rifle sprung, or any other stage in the series of acts that may be performed in committing an assault. It is sufficient that there be an act done indicating an intention to commit a battery, immediately coupled with the ability to do it."

The theory of punishing an attempt is that the accused, having the intent and having performed some act towards it, though not having committed it, should be punished for his evil design and that which he had done towards carrying it out. As said by Bishop, in the first volume of his New Criminal Law, Sec. 435:

"Wherever a man intending to commit a particular crime does an act toward it, but is interrupted, or some accident intervenes so that he fails to accomplish what he meant, he is still punishable. This is called a criminal attempt."

Of course, the act must be of sufficient magnitude, and calculated to create an apprehended danger. As observed by another:

"It is difficult in practice to draw the precise line which separates violence menaced from violence begun to be executed; for, until the execution of it is begun, there can be no assault. We think, however, that, where an unequivocal purpose of violence is accompanied by an act which, if not stopped or diverted, will be followed by personal injury, the execution of the purpose is then begun, the battery is attempted." 2 Wharton's Crim. Law, Sec. 798.

In this case, upon entering the hotel, late in the night, Tropp removed his shoes and, having informed Cox of his purpose to strike Dunlevy, moved, with a loaded 38-calibre revolver in one hand and a leather sap filled·with shot in the other, stealthily toward his head on the cot, where he was interrupted in reaching under the pillow by Dunlevy's springing to his feet. Had the latter, instead of doing this, merely opened his eyes, can there be any doubt that the billy or revolver would have been used either to put him in fear or disable him? Arming himself with the purpose stated, and approaching the cot in that condition, in the circumstances disclosed, was as definite a menace of violence against the person of Dunlevy as though he had approached with the revolver presented or the billy drawn, and, as we think, might properly have been found to constitute an assault. It follows that the evidence was sufficient to carry the issues as to defendant's guilt to the jury.

II. The court instructed the jury that "An assault to rob is an unlawful assault upon the person of another, with intent to steal or take from such person any money or valuable property that he may have upon his person."
3. ROBBERY: assault with intent to rob: elements of offense: trial: instructions. This was erroneous in that it omitted the necessary element of force or intimidation and merely defined an assault with intent to commit larceny. The error was not obviated by any qualifying instruction contained in the charge; and, for all that appears, the verdict must have been returned

under a misapprehension of the offense charged. The criticism of Instruction 11½ doubtless will be obviated on another trial.—*Reversed* and *Remanded.*

DEEMER, GAYNOR and SALINGER, JJ., concur.