STATE OF IOWA, Appellee, v. FRANK ROBY, Appellant.

RAPE: Assault on Consenting Child. The touching or handling of the
1    person of a female under the age of consent,—15 years,—with the
intent then and there to have sexual intercourse with her, constitutes an assault with intent to rape, when the touching and handling take the form of overt acts which amount to the *commencement of the consummation* of the sexual act.

**INDICTMENT AND INFORMATION:** Included Offenses—Rape. As-
2   sault and assault and battery are properly withdrawn from the jury,
under an indictment charging assault with intent to rape a prose-
cutrix under 15 years of age, when the evidence reveals the fact
that the naked assault and battery were consented to by the prose-
cutrix.

**CRIMINAL LAW:** Argument—Inflammatory Appeals. Principle reaf-
3   firmed that inflammatory arguments are highly improper.

**RAPE:** Assault with Intent—Nonapplicable Instruction. The rule that,
4 ·   when a person intentionally commits an act, he is presumed, in law,
to intend the results or consequences which ordinarily follow such
an act, is a rule of evidence bottomed on the fact that there is a
*resulting consequence* of the act charged, and an instruction to that
effect has no proper place in the trial of an indictment for assault
*with intent to rape.*

WEAVER and PRESTON, JJ., dissent, holding that no prejudice re-
sulted.

*Appeal from Madison District Court.*—J. H. APPLEGATE, Judge.

JUNE 21, 1922.

REHEARING DENIED DECEMBER 15, 1922.

DEFENDANT was charged with the crime of assault with in-
tent to commit rape. A jury found him guilty, and he appeals.
—*Reversed.*

*John A. Guiher, O. M. Slaymaker,* and *A. M. Miller,* for
appellant.

*Ben J. Gibson,* Attorney General, *Leo C. Percival,* County
Attorney, and *W. S. Cooper,* for appellee.

PRESTON, J.—1. The evidence is of such a character that,
in the interests of decency, the details ought not to be stated.
We shall attempt to cover the main points without stating the
nauseating details. There is no conflict in the evidence. No
evidence was offered on behalf of the defendant.

The prosecuting witness was 14 years of age, at the time

of the transaction in question. We gather from the record that defendant was a married man, of middle age. It appears that, for a long time prior to the date of the alleged crime, defendant had been one of the friends of the Jeffries family, and had lived in the same neighborhood. The family consisted of the prosecuting witness, Joy Jeffries, and her father and mother, with whom defendant was on intimate terms, and in whose home he frequently visited. The father of prosecutrix died some two or three months prior to the alleged assault. For two or three years prior to the time of the act complained of, defendant had frequently accompanied prosecutrix to her home,—sometimes from choir practice, and occasionally from the post office and the business part of town. Defendant was the leader of the church choir. Plaintiff testifies that she does not now play the organ in the church choir, as she did formerly. On the occasions mentioned, defendant would embrace and kiss her, tell her that he loved her, and in other ways protest his affection for her. The assault is alleged to have taken place July 17, 1919. For two or three months, or such a matter prior thereto, defendant occasionally arranged meetings with Joy, in a clump of trees or bushes back of the garage located on the premises where Joy lived with her family. One witness refers to thick weeds at the point where she discovered defendant and prosecutrix at the time in question. On this particular day, Joy was alone at home, her mother being absent at some church meeting. Joy was sitting in a swing upon the lawn, when defendant appeared at the door of a lumber yard situated near her home, and pointed over towards the bushes above referred to, back of the house. Joy indicated that she understood his signal, and he followed a roundabout course to the clump of bushes, where she met him, and they sat down on a railroad tie next to the garage, and he put his arms around her. Defendant then got up and moved a little farther out of sight, Joy following him; and when they were concealed by the bunch of bushes or row of trees above referred to, defendant again put his arms around her, and drew her down. At this time, defendant was lying on his left side, and prosecutrix was lying with her head on his arm. Their faces and bodies were very close to each other: one witness says they were as close together as they could get. From this point

on, the evidence discloses acts of familiarity by both, and a request by defendant. Without going into the details as to the touching of the person of prosecutrix, the evidence abundantly shows overt acts. While these things were going on, a neighbor lady, Mrs. Chaplin, discovered the two in the position described, and she testifies as to what she saw, and that she told defendant she was going to tell his wife, to which defendant made no reply. According to the testimony of the prosecutrix, defendant had, by a persistent course of love-making for a period of two years, gained her confidence, and on the occasion of the act complained of, assured her that he would not harm her.

The burden of appellant's contention has to do with certain instructions given by the trial court, and the sufficiency of the evidence to sustain the verdict. The prosecutrix, being under 15 years of age, could not, under our statute, consent to an assault with intent to commit rape. The trial court properly submitted to the jury, for its determination, the question of the guilt or innocence of the defendant only as to the charge in the indictment, to wit, an assault with intent to commit rape. Both nonconsent and force are essential ingredients of rape of a woman over the age of consent. Mere carnal knowledge of a girl under the age of consent is rape. It may be with or without her consent, and with or without the use of force; and if an indictment alleges force, in such a case, the allegation is mere surplusage. *State v. Anderson,* 125 Iowa 501. To sustain a charge of assault with intent to commit rape, the testimony must show that the act or acts of the accused constitute an assault, or that the act or acts of the accused, if done with the consent of the female, were acts to which she was, under the law, incapable of giving her consent. An assault necessarily includes an attempt. The ordinary definition of assault is that there must be an unlawful attempt or offer to apply force to another, with intent to do physical injury, and the present means to give it effect. *State v. Lewis,* 173 Iowa 643; *State v. Jerome,* 82 Iowa 749. All attempts to do physical violence are unlawful, unless permitted by law, and a person is not permitted by law to consent to unlawful assault. The individual cannot license crime, and the law violator cannot justify his criminal acts by

1. RAPE: assault on consenting child.

virtue of anybody's permission. If a girl under 15 cannot consent to the consummated act, she cannot consent to any essential criminal part of it. In the charge made herein, it is not necessary to show force: that is, such force as is required where the female is over 15. Appellant's contention is substantially this: That, since an assault is an ingredient of the offense charged, the assault must be unlawful; and that, even though prosecutrix was under 15, she could lawfully consent to an assault,— that is, a simple assault, or assault and battery; that she could consent to the acts of the defendant, as disclosed by the record; and that, there being no unlawful assault, defendant cannot be convicted of assault with intent to commit rape. It is further contended by appellant that Joy Jeffries, being more than 13 years of age, although less than 15, had reached the age where she was capable of consenting to lewd and lascivious acts, under Section 4938-a, Code Supplement, 1913, and that such acts, made criminal and punishable under said section, are not related to and not included in the crime of rape or in the crime of assault with intent to commit rape, because the two offenses are distinct.

For the purposes of this case, it may be conceded that the offense described in the section of the Code last mentioned is a distinct offense, and not included in the offense charged in this case. The trial court so treated the matter, and did not instruct that the offense under the Code section just mentioned was included in assault with intent to rape. We think Section 4938-a has no bearing. The mere fact that the same act may constitute two different crimes is not controlling. Such a situation often occurs. The first contention is doubtless true, in the sense that, with a child even under 15, consenting to a simple assault, or an assault and battery, by a touching of the person, the defendant could not be convicted, under the indictment herein, as an included offense, of either simple assault or assault and battery. We are very clear, however, that an assault, or a touching of the person, coupled with the intent to have sexual connection, is an entirely different matter. The trial court gave the following instructions, among others:

"5. It is provided by the laws of this state that, if any person carnally know and abuse any female child under the age

of 15 years, he is guilty of the crime of rape. The defendant, however, is not charged with said crime, nor is it claimed that defendant had sexual intercourse with the prosecuting witness, Joy Jeffries. The charge is, in substance, that the defendant, in Madison County, Iowa, on or about July 17, 1919, willfully, feloniously, and unlawfully made an assault upon said Joy Jeffries, with force, and with the intention on his part of having sexual intercourse with the said Joy Jeffries, she at the time being a female child under the age of 15 years. If you find from the evidence in this case, beyond a reasonable doubt, that the defendant, in Madison County, Iowa, on or about July 17th, made an assault upon said Joy Jeffries, with the intention on his part of having sexual intercourse with the said Joy Jeffries at said time, and you further find from the evidence, beyond a reasonable doubt, that the said Joy Jeffries was at said time a female child under the age of 15 years, then the defendant is guilty of the crime of assault with intent to commit a rape upon said Joy Jeffries, as charged in the indictment in this case. If you find from the evidence in this case, beyond a reasonable doubt, that the defendant, on the occasion complained of, laid hands upon the prosecuting witness, Joy Jeffries, in any manner whatever, such laying of hands upon her would constitute an assault, or an assault and battery, within the meaning of the laws of this state, so far as the charge of assault in this case is made; and if the defendant committed such assault upon the said prosecuting witness with the intent on his part of having sexual intercourse with her, and she was at said time under the age of 15 years, the defendant is guilty of the crime of assault with intent to commit a rape, whether such acts and conduct upon the part of the defendant were with the consent of said Joy Jeffries or were against her will.

"6. To constitute the crime of assault with intent to commit rape, the intent with which the assault is made is the gist or essence of the offense, and must be proven. The intention with which an assault is made is an act or emotion of the mind which prompts the act, and which is often incapable of direct or positive proof, but is to be arrived at or determined by such just or reasonable deductions or inferences from the acts and facts proven as the guarded judgment of a candid and cautious

man would ordinarily draw therefrom. The natural and probable consequences of every act deliberately done by a person of sound mind are presumed to be intended by the author of such act, and the law warrants the presumption or inference that a person intends the results or consequences to follow an act which he intentionally commits which ordinarily do follow such act. Such presumption, however, may be overcome by the proof. It.is for the jury to determine, from the facts and circumstances disclosed by the proof, whether or not, in doing the acts committed by him, if any, he committed the same with the intent on his part of having sexual intercourse with said Joy Jeffries. Of course, you will understand that, before you can find the defendant guilty of the crime charged in the indictment in this case, you must find from the evidence, beyond a reasonable doubt, that an assault or an assault and battery, if any, committed by the defendant upon the said Joy Jeffries, was committed by him with the purpose or intent on his part of having sexual intercourse with the said Joy Jeffries. * * *

"9. The allegations of the indictment in this case include three crimes of different degrees of enormity: 1. The crime of assault with intent to commit rape, which is the highest degree of crime included within the allegations of the indictment; 2. the crime of assault and battery, a lower offense; 3. the crime of assault, the lowest offense. However, under the evidence in this case, the court submits to the jury, for its determination, the question of the guilt or innocence of the defendant only as to the charge made in the indictment: that is, of an assault with intent to commit rape. The testimony of the prosecuting witness is, in substance and to the effect, that the acts committed by the defendant, if any, complained of, were with her consent. As she is shown by the evidence to have been, at the time, more than 13 years of age, the defendant cannot, in this action, be found guilty of either an assault and battery or of a simple assault, nor can the defendant be found guilty, in this case, of the crime charged in the indictment,—that is, the crime of assault with intent to commit a rape upon the prosecuting witness, Joy Jeffries,—unless you shall find from the evidence in this case, beyond a reasonable doubt, that he made an assault upon the prosecuting witness, and that in doing what he did on

the occasion complained of, he did it with the intention on his part of having sexual intercourse with the said Joy Jeffries. The said Joy Jeffries, if she was, at the time of the acts complained of, under the age of 15 years, was incapable, under the law, of giving consent to the act of sexual intercourse, and therefore, if you find from the evidence in this case, beyond a reasonable doubt, that, at the time in question, said Joy Jeffries was under the age of 15 years, and that the defendant made an assault upon her on or about July 17, 1919, in Madison County, Iowa, with the intention on his part of having sexual intercourse with her, then he is guilty of the crime charged in the indictment, and you should so return your verdict. If you fail to so find, then you should find the defendant not guilty, and so return your verdict. * * *

"11. The intent is the gist of the offense, in a case of this character, and unless you are satisfied beyond a reasonable doubt that the defendant intended, at the particular time complained of, to wit, July 17, 1919, and indicated by the prosecuting witness, to have sexual connection with the prosecuting witness, then and there, you must acquit the defendant of the crime charged in the indictment. Any intent short of that, as toying, loving, feeling, or dallying with the prosecuting witness, however reprehensible in itself, would not be sufficient to constitute the offense charged in the indictment.

"12. The defendant is presumed to be innocent of the charge made against him, and even though you may find from the evidence that he may have had the desire, and also the opportunity, to have sexual intercourse with the prosecutrix, such fact alone will not overcome the presumption of innocence. Before the defendant can be convicted of the crime charged in this case, it is incumbent upon the State to establish by the evidence, beyond a reasonable doubt, not only that defendant had such desire and such opportunity to have such intercourse with said prosecutrix, but also must further establish by the evidence, beyond a reasonable doubt, that, at the time and place, and by the acts complained of, the defendant made an assault upon said prosecutrix, with the intent then and there to have such sexual intercourse with said prosecutrix."

The court also gave an instruction in regard to the neces-

sity for corroboration, and in another, told the jury that an accusation of the crime charged was easy to make, difficult to prove, and more difficult to disprove; and gave other appropriate instructions.

We are of opinion that the instructions very clearly and correctly state the law, as applicable to the facts in this case, in regard to the point now under consideration. The trial court **2. INDICTMENT AND INFORMA-TION: included offenses: rape.** properly instructed the jury that defendant could not be convicted of the crimes usually included in such a charge as this,—of simple assault or assault and battery,—because the prosecuting witness consented, and could legally consent, to the touching of her person. Touching the person or caressing or fondling with intent to have intercourse is an entirely different proposition. It is thought by appellant that, by instruction on assault and assault and battery, there is a contradiction in the instructions on that subject and the instructions in regard to assault with intent to commit rape. But the instructions did not authorize a conviction for the lower degree. The instructions on simple assault and assault and battery merely defined such offenses, and were merely introductory and preliminary to the explanation in later instructions why, because of the consent of prosecutrix thereto, defendant could not be convicted of such lower degrees of what would ordinarily be included in an assault of a higher degree. Prosecutrix could not consent to the crime charged. *State v. Sherman,* 106 Iowa 684; *State v. Grossheim,* 79 Iowa 75. It may be conceded that the intent alone does not constitute a crime, and that there must be some overt act. As said, an assault is an attempt. The contention of appellant disregards the word "with," and entirely separates the touching of the person of prosecutrix, which, under some circumstances, might be an assault, or an assault and battery, from the intent with which the act of touching was done. The word "with" may mean "in addition to," "as incident thereto," "at the same time," "together with," etc. 40 Cyc. 2123. If the touching or handling of the person of prosecutrix was with the intention of having sexual intercourse, he was guilty of assault with intent to commit rape, even though she did, in fact, consent to the assault, or to the assault with intent to rape. Under the statute, she

could not legally consent to the latter. The assault or touching and the intent should be coupled together, rather than separated. To say that she could consent to the assault, and then say that the intent alone is not enough, and that, therefore, no conviction could be had,. would nullify entirely the meaning of the statute, and render it impossible to convict in any case where the female was over 13 and under 15, unless such force was used as would constitute the crime upon a female over 15. *State v. Sherman,* 106 Iowa 684, 687, is in point. In that case, after defining an assault, the jury was instructed:

"If you find from the evidence that the defendant, at the time and place in question, asked or caused the said Minnie Blood to lie down upon the ground and disarrange * * * her clothing, for the purpose of having sexual intercourse with her, that would constitute an assault; and if, in addition to such facts, you further find that it was the defendant's intention, in so doing, to carnally know her, and you further find that the said Minnie Blood, at the time, was under the age of 13 years [now 15], and nothing further be shown, then the defendant is guilty of an assault with intent to commit rape, and should be convicted accordingly."

Of this instruction, this court said:

"Nothing but actual sexual intercourse was necessary to follow the acts described as an assault, to constitute rape upon a female of that age. If so, and if the acts specified were done with intent to have such intercourse, then the conclusion must follow that it was an assault with intent to commit rape."

So it is in the instant case. Here, nothing was lacking to constitute the completed offense of rape, except some penetration. Had there been penetration, it would have been rape, even though prosecutrix had consented to it, and to every step leading up to the consummated act. In such case, it is wholly immaterial that some of the preliminary steps were consented to. She could not consent to the touching or fondling of her person coupled with the intention to have intercourse,—something which, under the statute, she could not legally consent to. There can be no doubt, and the evidence abundantly shows, and the jury could have so found, that, in all probability, defendant would have had intercourse at that time, but for the

appearance of Mrs. Chaplin. It is wholly immaterial whether prosecutrix said yes or no to defendant's request, or whether she consented or refused to consent. Because of the statute, her consent would be no consent. That defendant desisted because of the appearance of Mrs. Chaplin is no defense to the crime charged, though it doubtless prevented the completed offense of rape. It does not in any manner affect what had occurred up to that time,—a completed offense: that is, touching and fondling prosecutrix with intent to have intercourse with her. In the very nature of the case, where there is either the completed offense of rape or assault with intent to commit rape, there is more or less touching or handling of the person, as was done in this case. Doubtless they were done for the double purpose of arousing defendant's own passions and to arouse the girl's passions, that she would more readily permit him. It is suggested that the evidence shows no overt act. We think that the evidence abundantly shows not only one, but numerous, overt acts —preliminary steps in preparation for sexual intercourse. It need not be the last act requisite for the completion of sexual intercourse, which would be but one step in the process before the completed act—one of numerous steps. Defendant had arrived at the last state of the proceedings, and doubtless the next step would have been the last and only remaining act to be done, but for the appearance of Mrs. Chaplin. The matter of fondling the person of prosecutrix was an overt act, and especially so when the completed act could easily have been performed. They were both on the ground in the position shown, which would permit the completion of the act. It may be conceded, though there are some cases to the contrary, that mere solicitation does not constitute an attempt. It has been held that an attempt to commit a felony is made by soliciting a person to set fire to the dwelling house of another and giving him matches for that purpose, besides offering him a reward, though the matches are not used for that purpose and the offer is rejected. This ruling is based on the rule that, where a person does an act tending to the commission of a crime, but is prevented from reaching the desired result through the intervention of some cause, he is guilty of an attempt. 8 Ruling Case Law 278. It is doubtless true that mere acts of preparation not proximately leading to

the consummation of the intended crime will not suffice to establish an intent to commit it, especially when made at a distance from the place where the substantial offense is to be committed; and there must be some act moving directly toward the commission of the offense after the preparations are made. 8 Ruling Case Law 278. In the instant case, defendant made preparation by enticing prosecutrix by signals to go to a secluded place where the act could be committed. They were on the ground in position to have intercourse. Her clothing was more or less disarranged. This is precisely what was done in the *Sherman* case, supra. These acts proximately led up to the consummation of the intended crime, and were overt acts.

"The [overt] act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. * * * While it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made. Whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt; and the courts should not destroy the practical and commonsense administration of the law with subtleties as to what constitutes preparation and what an act done towards the commission of a crime. It would be useless to attempt to lay down any rule by which an act might be characterized as overt or otherwise in a particular case, and the general principles * * * must be applied in each case, as nearly as can be, with a view to working substantial justice."

The foregoing propositions, with the citation of numerous authorities, will be found in 8 Ruling Case Law 279. *Cromeans v. State,* 59 Tex. Cr. 611 (129 S. W. 1129), and some other similar cases are relied upon to sustain the contention of appellant that there was no attempt, no overt acts, and no assault with intent to commit rape. The *Cromeans* case is not in point. In the course of that opinion, the court says that there has been such contrariety of opinion among the judges of the court as to whether or not an assault upon a girl 15 years old, with her con-

sent, and with the intent to obtain carnal knowledge of her person with her consent, is an assault with intent to commit rape, that it would be futile to undertake a reconciliation of the conflict. The facts in that case are that a girl 14 years old and a boy 16 met at the gate, and he made an indecent proposal to her, which was rejected. She tried to get through the gate, and he caught her by the hand or arm to detain her, and she jerked loose and ran away. That is all there was to it. The boy testified that he just said what he did to see what she would say. There was no enticing to a secluded place, placing themselves upon the ground in position to have intercourse, and other things that were done in the instant case. The court, in the case cited, interpreted the language to mean that it was mere solicitation on his part, and his detaining her to hear solicitation to have intercourse at a time in the future; and that this did not constitute assault with intent to rape. The court said:

"We think more than mere detention, more than a decent laying on of the hands, some approach, at least, towards preparation for the ultimate act, something showing with reasonable certainty that intercourse is the immediate design to be now effected, as the outcome of an act now begun."

These last mentioned matters were done in the instant case. The jury were justified in finding that it was defendant's purpose and intention to have intercourse with the prosecutrix at the time in question, and that there was more than mere solicitation to have intercourse at some future time. One step further, and the completed offense of rape would have been done. Assault with intent to commit rape may be committed on a child under the age of consent, and intent may be inferred from all the facts and circumstances. *State v. Newton*, 44 Iowa 45. When nothing but actual intercourse is necessary to follow the acts described as an assault to constitute rape upon a female under the age of consent, and if the acts were done with intent to have such intercourse, the crime is assault with intent to commit rape. *State v. Sherman*, supra; *State v. Grossheim*, supra; *State v. Johnson*, 133 Iowa 38. See, also, *State v. Berry*, 192 Iowa 191; *State v. Fujita*, 20 N. D. 555 (129 N. W. 360); *Croomes v. State*, 40 Tex. Cr. Rep. 672 (51 S. W. 924); *Hanes v. State*, 155 Ind. 112 (57 N. E. 704); 2 Ruling Case Law 457;

*Liebscher v. State,* 69 Neb. 395 (95 N. W. 870). In the last cited case, at page 400, the court quotes·from an Indiana case to this effect:

"If, under the law, a female under 12 years of age is incapable of giving her consent to the act of sexual intercourse, then she is equally incapable of consenting to all familiarity with her person that necessarily precedes the consummation of the act."

This might not be so under our statute before referred to, as to mere lascivious acts, without the intention of having sexual intercourse. See, also, 22 Corpus Juris 103, where many references are made to matters which will be presumed, and the sense in which the words "presumption" and "inference" are used. It is not necessary that the child make any resistance. *State v. Carnagy,* 106 Iowa 483. The foregoing disposes of the principal argument advanced.

2. Complaint is made of the alleged misconduct of the county attorney in the closing argument to the jury. We do not approve of the language used, and a majority of the court specifically disapprove it. For myself, I do not think there is reversible error in it. Counsel for appellant evidently did ·not consider this matter of sufficient importance to embody it in the abstract. It appears that the closing argument of the county attorney was taken down by the court reporter. This is, for the first time, set up in appellant's amendment to abstract. Much of the closing argument of the county attorney is taken up in answering arguments of counsel for appellant. It so shows on its face. No affidavits were filed and no showing made by appellant or his counsel that the statements the county attorney says he was answering were not made. No objections were made to the remarks now complained of, and no exceptions thereto, except as they are referred to in the motion for new trial. From the argument of the county attorney, it appears that counsel for appellant, in their argument, gave numerous experiences of their own in the trial of other cases, which were outside the record. Counsel for appellant first referred to the matter of mob law, and the county attorney's argument which is complained of has reference to that subject. The statement, as I think, seems to have

3. CRIMINAL LAW: argument: inflammatory appeals.

been in answer to and invited by the argument of counsel for appellant. We have several times referred to the fact that, in criminal cases, counsel for defendants, in their zeal for their clients, use arguments to secure an acquittal, because no new trial can be granted the State. *State v. Browman,* 191 Iowa 608; *State v. McClure,* 159 Iowa 351, 354; *State v. Gulliver,* 163 Iowa 123. The trial judge, of long experience, heard all the arguments, and in overruling the motion for new trial necessarily held that, in his opinion, there was no prejudice. Heretofore we have held that such finding is a matter of great weight. *State v. Hall,* 168 Iowa 221. See, also, *State v. Cooper,* 169 Iowa 571, where, at page 587, the court said:

"The rule is that mere misconduct of counsel is not enough alone to require the granting of a new trial, unless it appears to have been so prejudicial as to deprive the complaining party of a fair hearing of his case by the jury on the evidence. The trial court having heard all that took place on the trial, we ought not to interfere with his discretion in refusing a new trial" (citing *State v. Thomas,* 135 Iowa 717; *State v. Waterbury,* 133 Iowa 135; *State v. Norman,* 135 Iowa 483; *State v. Wilson,* 157 Iowa 698). See, also, *State v. Burns,* 119 Iowa 663, and *State v. Drake,* 128 Iowa 539, where the limits of argument are well defined. We have held that, where defendant makes no complaint at the time as to improper remarks of counsel, and asks no direction to the jury for the purpose of removing prejudice arising therefrom, he cannot afterwards complain. *State v. Hogan,* 115 Iowa 455; *State v. Busse,* 127 Iowa 318. In the last named case, it was held improper for the prosecuting attorney to suggest to the jury the possibility of a lynching, in case they should acquit. That is not the situation here, nor the statement made by the prosecutor. As I view it, the statement in the instant case was not as strong or as prejudicial as in the *Busse* case. The prosecutor simply gave his opinion that, if the father of prosecutrix had been living, it might have been disastrous to the defendant. While, as said, the language is not to be approved, yet, under all the circumstances, I think there was no prejudice shown. We said, in *State v. Sale,* 119 Iowa 1, that improper argument cannot first be made the ground of objection on motion for new trial, but should be called to the at-

tention of the court at the time when the court might have re-
strained the continuance of the improper argument and pre-
vented the prejudice which is claimed to have resulted there-
from. *State v. Chocklett*, 155 Iowa 511; *State v. Wilson*, supra.
In *State v. Johns*, 152 Iowa 383, we said that the matter of
granting a new trial on account of improper argument of coun-
sel is largely within the discretion of the trial court. I do not
overlook the cases holding that, where the remarks were so in-
flammatory as to be clearly prejudicial, a reversal may be had,
although no exceptions were taken at the. time. The remarks
in the *Proctor* case, 86 Iowa 698, 701, and other cases cited by
appellant, are much stronger than in the instant case. In the
instant case, the arguments on behalf of defendant were not pre-
served. We have held that, under such circumstances, it will
be presumed, nothing appearing to the contrary, that argument
by the prosecutor was a legitimate response to argument for the
defendant. *State v. Browman*, supra. In the instant case, in
addition to the presumption, the argument itself shows that it
was in response, or largely so, to argument for appellant. Be-
cause the case is to be reversed on the ground set out in the
next paragraph of the opinion, it is unnecessary to discuss this
subject further.

3.   Instruction No. 6 is complained of, and particularly one
clause in the middle of it, to the effect that the natural and prob-
able consequences of every act deliberately done by a person of
sound mind are presumed to be intended by the
author of such act; and that the law warrants
the presumption or inference that a person in-
tends the results or consequences to follow an act which he in-
tentionally commits, which ordinarily do follow such act; and
that such presumption may be overcome by the proof. A ma-
jority of the court are of opinion that the instruction is errone-
ous, and that the case must be reversed because of the error.
The writer is of opinion—and in this Mr. Justice Weaver con-
curs—that there is no prejudice at this point. The majority
argue and hold that the language just referred to is a rule of.
evidence bottomed on the fact that there is a resulting conse-
quence of the act charged; that there was no result or conse-
quence following any act of the defendant's which the court

*Margin note:* 4. RAPE: assault with intent: nonapplicable instruction.

might properly say to the jury ordinarily does follow such an act; that the instruction assumes a mere probability, and the jury would be warranted in presuming that it was the intention of the defendant to have intercourse with the prosecutrix; that the presumption of his intention is based upon the presumption as to what would probably occur, but which did not occur; that the rule of evidence announced in this instruction has no application to the case at bar. *State v. Dolan,* 17 Wash. 499, and *Demato v. People,* 49 Colo. 147, are cited. Considering the instruction as a whole, I think it is not susceptible to the construction placed upon it by the majority, wherein a single clause in the instruction is singled out. I confess that the purpose or thought in the court's mind in inserting this clause in the instruction is not clear. The point is not argued by counsel for the State. As an abstract proposition of law, it is correct. It may have been the thought of the court that the jury could find that sexual intercourse usually does follow such acts of preparation and overt acts as were here shown; that the jury could properly so infer. Indeed, it seems to me that the court uses the word "presumption" in the sense that it would be a proper inference to draw from the acts shown, rather than a presumption. The language is:

"The law warrants the presumption or inference that a person intends the results or consequences to follow an act which ordinarily do follow such act."

In *Mitchell v. Phillips Min. Co.,* 181 Iowa 600, at 604, we pointed out that there are countless definitions for the word "presumption," and that frequently the word so used is the wrong word, and that "presumption, assumption, and inference" are indiscriminately made use of. Some authorities make a distinction between "presumption" and "inference," and say that inference is a reasoning or logical process involving deduction or induction. Reading all of Instruction No. 6 together, it seems to me that this is the meaning of the court, conveyed in the use of the words "presumption or inference;" and that the jurors, not being lawyers, would not be able to discriminate, and to give the word "presumption" one of the countless meanings attributed to the words by the holding of the majority members of the court. The jury would not be able to distinguish or apply

in their own minds that a presumption is one of law or fact, or to distinguish whether it is a presumption simply changing the burden of proof or the burden of adducing evidence or the burden of convincing the jury, or whether it requires a mandatory deduction or a permissible deduction. While the authorities say that the two words "presumption" and "inference" are not synonymous, yet they are often so used. Taking all of Instruction No. 6 together, there is nothing to indicate to the minds of the average jurors or of anybody else that the court intended to convey the impression that the jury was compelled to make the deduction that defendant intended to commit rape. The meaning seems to be that, from all the facts and circumstances, they might presume or assume or infer that such was the fact. Clearly, the court left it to the jury to determine from all the facts what defendant's intention was. The strength of the presumption or inference from all the facts and circumstances shown, as bearing upon the intent, was left entirely to the jury. If a person levels a loaded pistol at another and discharges it, intending to kill, it would be a proper presumption or inference that the intent to kill existed, even though the aim was not effective, and even though the person shot at was not struck at all: that is, the thing intended did not occur, just as the majority argue in the instant case that the completed act did not occur. In such a case, I think it would be proper for the court to so instruct the jury. If a man and woman discuss the subject of intercourse, fondle each other, and consent and agree to have intercourse, and the disposition is shown, and they then go to a room, disrobe, and occupy the same bed, I am not so sure but that the presumption or inference would obtain that they intended to have intercourse, and that a jury would be justified in so finding, and a court in so instructing. They could rebut the presumption by showing that, by such acts, they intended some religious ceremony or innocent purpose, if anyone could be found gullible enough to believe it. In the instant case, there is no evidence in the record to rebut the inference which may be properly and lawfully drawn, or to indicate that defendant intended anything else by what he did. The court instructed that such a presumption or inference is rebuttable.

In *State v. Wilson*, 152 Iowa 529, it was held that it was not error to fail to instruct that a presumption is rebuttable, where there was no evidence rebutting. In *State v. Newton*, supra, we said that intent may be inferred from all the facts and circumstances. In that case, the defendant was charged with the crime of assault with intent to commit rape upon a child under the age of consent. He was convicted, and this court affirmed the judgment. In that case, the trial court instructed:

"If you find the alleged assault was made, as charged, then has the intent been sufficiently proven. The intent must be established from the evidence, but it may be inferred from the facts and circumstances. If the evidence establish the facts which usually accompany and precede the crime of rape when fully consummated, then, if such facts and circumstances have not been explained, and the assault is made out, it is fair to *presume* that the assault was accompanied by the intent."

The instruction then recites the circumstances which may be considered by the jury in determining the intent.

Instruction No. 6, now under consideration, seems to be in harmony with the instruction given in the *Newton* case. It should be said, however, that the precise point now raised was not there raised or considered. In *State v. Sherman*, supra, the instruction given by the trial court, and approved on appeal, after referring to preliminary and overt acts and to the age of prosecutrix, recites that:

"If, in addition to such facts, you further find that it was the defendant's intention, in so doing, to carnally know her, * * * and nothing further be shown [nothing rebutting], then the defendant is guilty of an assault with intent to commit rape, and should be convicted accordingly."

Instruction No. 6, taken as a whole, clearly leaves it to the jury to determine whether defendant, in doing the things he did do, had the intention of carnally knowing prosecutrix. The facts in the *Sherman* case and in the instant case are quite similar. In the *Sherman* case, the jury was told pointedly that, if the jury found the matters stated to be true, defendant was guilty. In the instant case, the instruction does not say that defendant is guilty, but that the jury may presume or infer

guilt. It seems to me that, if the meaning of the instruction was not as I have indicated, then it does not mean anything, and in that case, the error, if any, would be nonprejudicial. As said, I do not think that the fragment of Instruction No. 6 referred to is susceptible of the construction placed upon it. It may be that the thought of the trial court was that, had there been penetration, as suggested and requested by the defendant, the presumption or inference would obtain that he so intended, in the absence of any evidence rebutting the presumption or inference. Or perhaps the instruction was a stock instruction, sometimes used, and this particular clause was used inadvertently. But in any event, considering all that precedes and follows the clause in question, this clause is a mere general statement, and nonprejudicial.

Other questions are argued: for instance, the question of corroboration, and the alleged lack of complaints by the prosecutrix, and so on. It is also thought that the court did not, by its instructions, refer to the precise time of the transaction in question. It is true, the court did not use the words "then and there," in referring to the intent, etc.; but in several places in the instructions, the court used the language, "on the occasion complained of." Others refer to the date, July 17, 1919. We think the point was fully covered. There was evidence of complaints, and the corroboration is amply sufficient. The points noticed are controlling. All points have been considered.

I would affirm on all points; but, as said, a majority favor a reversal on the ground stated. The cause is reversed and remanded for further proceedings in harmony with the opinion.— *Reversed and remanded.*

STEVENS, C. J., EVANS, ARTHUR, and FAVILLE, JJ., concur as to Paragraph 1 of the opinion, and concur in the result.

WEAVER, J., concurs in the views of the writer as expressed in Paragraphs 1 and 3 of the opinion.

DE GRAFF, J., does not agree to Paragraph 1 of the opinion, but concurs in a reversal on the ground stated in Paragraph 3.

DE GRAFF, J. (specially concurring). I concur in the reversal of the judgment in this cause, but in the opinion of the

writer the reversal should be predicated on further and additional grounds as noted in appellant's assignment of error. The burden of appellant's contentions has to do with certain instructions given by the trial court and the sufficiency of the evidence to sustain the verdict.

The prosecutrix was slightly under the age of 15 years. Under our statute she could not consent to an unlawful assault nor could she consent to the consummated act or to any essential criminal part of it. On this proposition we are all agreed. No issue was submitted to the jury for determination except the guilt or innocence of the defendant as to the charge in the indictment, to wit: assault with intent to commit rape. This was a correct instruction, if the evidence warranted a submission of the case to the jury. *State v. Sherman,* 106 Iowa 684; *State v. Johnson* 133 Iowa 38; *State v. Herrington,* 147 Iowa 636.

In one instruction it is said that the act of the defendant in laying hands upon the prosecuting witness, "in any manner whatever constitutes an assault or an assault and battery within the meaning of the law of this state, so far as the charge of assault in this case is concerned," and if the defendant did so with intent to have sexual intercourse with her he would be guilty of the crime of assault with intent to commit rape.

Is this statement of the law to the jury correct? It is not sufficient to construe instructions as mere abstract propositions of law. They must be viewed with reference to the facts and to the issues in the case, and only as thus limited or explained has the pronouncement of law in opinion any value. Instructions must be written and read in the light of the evidence in the case. In considering the complaint lodged against the foregoing instruction it is necessary that the case is predicated on correct legal definition.

Both nonconsent and force are essential ingredients in rape of a woman over the age of consent. Mere carnal knowledge of a girl under the age of consent is rape. It may be with or without her consent and with or without the use of force, and if an indictment alleges force in such a case the allegation is surplusage.

The word "female," as used in Code Section 4769 making an *assault* upon a *female* with intent to commit rape a crime,

includes all females of the human species. Furthermore the word "assault" means an unlawful assault. It is not subject to classification. Therefore to sustain a charge of assault with intent to commit rape the testimony must show beyond a reasonable doubt (1) that the act or acts of the accused constitute an assault within the commonly accepted legal meaning of the word or (2) that the act or acts of the accused, if done with the consent of the female, were acts to which she was, under the law, incapable of giving her consent.

What is an assault? It is an unlawful attempt to commit physical violence upon the person of another with intent to injure. It necessarily includes an attempt. It implies unlawful physical force partly or fully put in motion creating reasonable apprehension of an immediate physical injury to a human being. The word has a well defined meaning in the common law and it has the same meaning in our penal code. There must be an unlawful attempt or offer to apply force to another with intent to do physical injury, and the present means to give it effect. *State v. Lewis*, 173 Iowa 643 with cases cited; *State v. Jerome*, 82 Iowa 749.

The assault, being an ingredient of the offense charged, must be unlawful and at the threshold of this case we are confronted with the question whether the defendant under the evidence did make an unlawful assault upon the person of the prosecuting witness. Could she lawfully consent to the act or acts of the defendant as disclosed by the record?

To what point or state of the proceeding can she give consent to acts on the part of the accused without making him guilty of an unlawful assault? It must be conceded that the instant defendant desired intercourse with the prosecutrix and in the light of their past associations extending over a considerable portion of time it may reasonably be supposed that he expected his request would find fruition, but the evidence shows he was simply soliciting to secure her consent. He attempted nothing toward the act of copulation. Solicitation by mere words with the expectation of consent does not amount to assault with intent to commit rape on a girl under 15 years of age.

In *Cromeans v. State*, 59 Tex. Cr. 611 (129 S. W. 1129) it

is said: "Some approach, at least, towards preparation for the ultimate act, something showing with reasonable certainty that intercourse is the immediate design to be now effected as the outcome of an act now begun. However reprehensible and immoral the solicitation of the chastity of a young girl may be, there is yet no statute making it an offense, and when the facts, whether consisting in words alone or in words joined together with acts, go no further than solicitation, or no further than the obtaining of consent, the offense is not made out."

We must distinguish between an actual unlawful attempt to consummate the act and mere preliminary acts to which the prosecutrix could lawfully consent.

We are not dealing with a code of ethics but with legislative enactment and legal definition. No normally moral person can condone the reprehensible and despicable conduct of this defendant. The legalist can join with the moralist and say that the snake in the grass or the reptile in the slimy pool are not more to be loathed than the human vulture who would take the most priceless gem from the diadem of womanly virtues. Conduct, however immoral, may be legally unobjectionable. Guilt in crime is made dependent upon definition and proof. It is not inferred or presumed, nor is it gauged by any standard of morals although the law finds its basis in moral principles. Acts may shock the moral sense but they are not necessarily prohibited in a criminal or legal sense. *Johnson v. State*, 27 Neb. 687 (43 N. W. 425); *Smith v. Commonwealth* 54 Pa. St. 209.

In the defining of crime the sovereign state does not create justice in an ethical sense, although its power to do so is unlimited. A tort is a tort in a legal sense only because the law has made it so. *United States v. Thompson*, 257 U. S. — (42 Sup. Ct. Rep. 159, 161). No act is a crime in this state unless made punishable by law. *State v. Banoch*, 193 Iowa 851. A man's evil inclinations or intentions, however reprehensible they may be, are not in the catalogue of public offenses. The mere intention to commit a crime or to do a wrong is not an offense. *State v. Thompson*, 133 Iowa 741; *State v. Kendall*, 73 Iowa 255. "Surely the presumption of innocence should prevail until something more tangible than proof of the mere inclination to sin and the chance to commit it is forthcoming." *State v. Thomp-*

*son,* supra.    Persuasion or inducement or mere words or any act to which the person may lawfully consent is not an assault, and this applies where the man is expecting and encouraging sexual intercourse with a woman.    *Rahke v. State,* 168 Ind. 615 (81 N. E. 584) ; *State v. Riseling,* 186 Mo. 521 ; *People v. Dowell,* 136 Mich. 306 (99 N. W. 23).

Mere solicitation of intercourse does not render one guilty of assault with intent to rape if no act or effort is made to carry out the intent of the solicitor.    *State v. Sanders,* 92 S. C. 427 (75 S. E. 702) ; *Douglass v. State,* 105 Ark. 218 (150 S. W. 860) ; *State v. Butler,* 8 Wash. 194; *Addison v. People,* 193 Ill. 405 (62 N. E. 235) ; 33 Cyc. 1434; 22 Ruling Case Law 1231.

Some unlawful act overt in its character, which has an immediate relation to and preparation for or the bringing about of a condition under which intercourse can be accomplished, with intent then and there to have intercourse, must be established beyond a reasonable doubt to predicate a verdict of guilty upon a charge of assault to rape.    In order that the principle stated may find application in this case in the light of the instruction given let us examine the evidence assuming the testimony of the prosecutrix to be true.

Respecting her relations with the defendant at the time charged in the indictment she said the defendant "put his arms around me first."    This was with her consent and she could lawfully consent.    She voluntarily put her arms around him. He kissed her and she kissed him.    It was her legal privilege to permit this manifestation of love on his part and to reciprocate on her part.    "We were lying down; Mr. Roby was lying rather on his side; I was lying on my side; we were very close to each other; and our faces were together."

The prostrate position of these parties was voluntary on the part of each.    He did not request or force her to take this position and on various occasions extending over a period of several months they had been under like circumstances at the same place.    She had voluntarily gone to this particular spot on this day.    They had frequently made love to each other before this date.    This was with her consent and it was a lawful consent.    While in the position described she testified: "He put his hand under my bloomers; he put his hand on my naked

body at that time,'' just where the evidence does not disclose. It was a lewd act but not criminal under our statute. She consented thereto and had the lawful right to consent. She was past 13 years of age. See Section 4938-a, Supplement, 1913. Was anything more done? No, except that he said to her, ''Can I have intercourse? I told him no. He asked me if I would promise him I would not let anybody else do anything bad. He told me that it was wrong to do anything of that kind, that I must not let anybody do that. I don't think we stayed there 20 minutes after that.'' She testified that ''He did nothing more.'' This event happened July 17, 1919 about the middle of the afternoon in a clump of bushes a short distance east from the girl's home in Truro, Iowa.

Is this evidence sufficient to warrant a conviction? No. Was the instruction of the court in the light of this evidence correct? No. This testimony discloses mere solicitation unaccompanied by a physical effort to effectuate his intent. No overt act amounting to an assault was committed unless it may be said that she could not lawfully consent to that which was done. Nothing was done by him except to solicit her consent. Everything was lawfully acquiesced in by the prosecutrix and sexual intercourse was neither had nor attempted, nor was an unlawful assault made. There was no overt preparation for the act. Therefore no crime was committed, however intense his desire or wavering his hopes. She was not being detained and there is no present existing intent shown to realize the fruit of a consent not yet given. The mere laying on of hands under the circumstances is not an unlawful assault, but the court said it was. The jury in this case could rigidly adhere to the literal primary meaning of the words of the instruction given and undoubtedly did so.

The evidence does not support the verdict. It may not be said that ''nothing but actual sexual intercourse was necessary, to follow the acts described as an assault, to constitute rape upon a female of that age'' (State v. Sherman, supra), since no unlawful assault was committed preparatory to the consummation of the act then and there.

An examination of the Iowa cases of this character dis-

closes that the verdicts were sustained on evidence that established an unlawful assault.

In *State v. Sherman*, 106 Iowa 684 the defendant asked or caused the prosecutrix to lie down and he disarranged and unbuttoned her clothing for the purpose of having sexual intercourse with her. In *State v. Carnagy*, 106 Iowa 483 the evidence "tends to show that the defendant did his utmost to accomplish his wicked purpose, and if he failed, it was because of the tender years of his victim." In *State v. Johnson*, 133 Iowa 38, the accused decoyed the girl from her younger sister, fastened the door when with her in the room and the evidence "tended to show at least two criminal attempts." In *State v. Haugh*, 156 Iowa 639 the defendant was found guilty of assault to rape on an indictment charging the crime of rape. The evidence disclosed an actual assault. In *State v. Jerome*, 82 Iowa 749 an unlawful assault was made by defendant upon a girl four years of age. In *State v. Grossheim* 79 Iowa 75 the evidence tended to prove that the defendant disarranged and removed the clothing so as to expose the private parts of the prosecutrix and that he also opened his own clothing, exposed his private parts, and drew the prosecutrix upon his person while he was lying down.

I deem it unnecessary to further examine our own decisions as they are clearly distinguishable on the facts from the instant case. Suffice it to say that the verdicts were predicated on unlawful assaults. It is a sad commentary on human nature that cases like this should occur, but verdicts should stand only when the essential elements of the crime charged have been established, and the acts of the accused constitute a crime under our penal law.