ROSS CROMEANS V. THE STATE.

No. 4008.   Decided October 27, 1909.

Rehearing granted June 15, 1910.

**1.—Assault with Intent to Rape—Consent—Female under Age.**

Solicitation accompanied by the expectation of consent, and laying on of hands without the use of such force as indicates a purpose to obtain intercourse at the very time, does not amount to assault with intent to commit rape on a girl under fifteen years of age.

**2.—Same—Definition of Offense.**

Since it is rape to have carnal knowledge of a woman by force, and of a girl under fifteen years of age by or without force, and since the word woman includes all females, a child must be embraced in the definition of an assault with intent to commit rape under article 608, Penal Code.

**3.—Same—Other Definitions of Offense—Assault.**

Though an assault is an offense against the person, and so denominated in our Code, it is none the less an offense against the State, and the person can not waive the right of the State, and the consent of the person assaulted is not one of the exceptions to the statutory rule that violence upon the person is unlawful.

**4.—Same—Force—Statutes Construed.**

That portion of article 528, Penal Code, relating to rape on a child, is not referred to in article 634, Penal Code, defining force; a child being embraced

in the word woman in article 608, and unlawful violence and injury being done upon her in making the assault, her consent can not take away the wrong.

**5.—Same—Law Stated.**

If a man puts his hand upon a girl under age of consent and at the time intends instantly to have sexual intercourse, and without suspension of action and without waiting to ascertain whether or not she would consent, then and there places her in such attitude as that the final act could be performed upon her, whether the purpose is to put her in such attitude by his force alone or by her free cooperation and consent, he has gone far enough to render him guilty of the offense of assault to commit rape.

**6.—Same—Case Stated—Insufficiency of Evidence.**

Where, upon trial of assault with intent to commit rape, the evidence showed that the defendant was a boy of sixteen years of age and the prosecutrix under fifteen years of age and had known each other for years, and that at the time of the alleged offense he asked prosecutrix to show him her privates and invited her to sexual intercourse; that she refused in succession both of his proposals; that he then placed his hand on hers, and when she jerked it away he put his hand upon her arm, and she jerked that away and departed from him after which defendant desisted, the same was insufficient to support a conviction of assault with intent to rape. Approving Croomes v. State, 40 Texas Crim. Rep., 672. Qualifying McAvoy v. State, 41 Texas Crim. Rep., 56; Hardin v. State, 39 Texas Crim. Rep., 426.

Appeal from the District Court of Edwards. Tried below before the Hon. R. H. Burney.

Appeal from a conviction of assault with intent to rape of female under fifteen years of age; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Hill* and *Will A. Morriss,* for appellant.—Before a conviction of assault with intent to rape is warranted, it must have been shown beyond a reasonable doubt that defendant assaulted prosecutrix with the specific intent at the time of the assault to then and there have carnal intercourse with her. Croomes v. State, 40 Texas Crim. Rep., 672, 51 S. W. Rep., 924; id., 53 S. W. Rep., 882; House v. State, 9 Texas Crim. App., 567; Carter v. State, 44 Texas Crim. Rep., 312, 70 S. W. Rep., 971; Fewox v. State, 49 Texas Crim. Rep., 172, 90 S. W. Rep., 178; Eiley v. State, 55 Texas Crim. Rep., 1, 114 S. W. Rep., 793; Warren v. State, 51 Texas Crim. Rep., 598, 103 S. W. Rep., 888; Sanders v. State, 54 Texas Crim. Rep., 171, 112 S. W. Rep., 938; 33 Cyc., p. 1435; Kenney v. State, 79 S. W. Rep., 817; State v. Pickett, 21 Am. Rep., 754; Smith v. State, 80 Am. Dec., 355, and cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of an assault with intent to rape on a female under fifteen years of age, his punishment being assessed at two years confinement in the penitentiary.

Appellant's main insistence in this record is that the verdict is contrary to the law and unsupported by the evidence. The testi-

mony shows that prosecutrix was fourteen years of age, and appellant sixteen years of age. They lived in the country below Barksdale, and had known each other for years, having gone to school together. Prosecutrix lived farther from town than appellant. Prosecutrix had gone to town on the morning of the alleged assault, and was coming home alone on foot about 12 o'clock. The circumstances of the assault are related by her as follows: "After I left Bort's house and passed Cromeans' place, and had gone through the gate near Cromeans' place, known as the Rhodes gate, and had gotten about half way from there to the Sweeten gate, which is about one mile from Ross Cromeans' house, Ross Cromeans passed me on horseback, going the same way I was going. When I reached the Sweeten gate Ross Cromeans was there and had gotten off his horse and was standing at the gate kicking it. I asked him three times to get out of the way and let me pass. He then said to me: 'Let me see your cock.' I told him I would not do it, and for him to let me through, and then he said: 'Let me fuck you.' I said I would not and then tried to get through and he caught me by my hand, and I jerked loose from him, and then he caught me by my arm, and I jerked loose from him again and ran away back down the road towards Barksdale. I did not see him any more that day. He did not follow me." Appellant denied meeting the prosecutrix at the Sweeten gate. He introduced a number of witnesses to show he did not see her at said gate, which was nearly a mile from his house, but he testified to having a conversation with her at a gate nearer his father's house, in which he made an indecent proposal to her. He testified that he never did have intercourse nor attempt to have intercourse with Bertha Bradley at any time. "I have never had intercourse with any woman. I did not try to have intercourse nor expect to have intercourse with her. I just said what I did to her to see what she would say. I do not know what made me do it." Nothing further is shown to have occurred between the parties than that above detailed. In addition to the above, the statement of facts shows that appellant testified to the following: "It is not true that I accosted her or caught hold of her or made any remarks to her on the 8th day of last June at the Sweeten gate, but I just remarked to her at the Rhodes' gate that she had better give me some before she left and she got very mad, and said she would not do it and picked up a rock. I told her she need not get mad, I was not going to do anything to her, and I turned and walked away and she started on down the road. I did not catch her by the hand nor arm; I did not touch her, and that is all I said to her." Under the authorities of this court this evidence makes out an assault with intent to rape on a child under fifteen years of age. See McAvoy v. State, 41 Texas Crim. Rep., 56; Carter v. State, 44 Texas Crim. Rep., 312; Hudson v. State, 49 Texas Crim. Rep., 24. The jury saw fit to believe the prosecutrix's testi-

mony to the effect that appellant did take hold of the prosecutrix. This is an assault, the elements of consent vel non not entering into a prosecution for assault with intent to rape upon a child under fifteen years of age. Appellant having the specific intent to rape where he takes hold of the prosecutrix, makes out the offense under the authorities of this court. Appellant in his brief insists this court should review the authorities on this question anew. We have done so, and hold that the case of Croomes v. State, 40 Texas Crim. Rep., 672, lays down the correct rule, which has been followed uniformly since by the majority of this court. When appellant seized hold of the prosecutrix, according to her testimony, clearly in the light of his offensive suggestion made to prosecutrix above detailed, this showed a specific intent to have carnal intercourse with prosecutrix with her consent. The charge of the court admirably presented the law applicable to the facts of this case, and in clear consonance with the decisions of this court, and there is no error in this record authorizing a reversal of this case. The judgment is affirmed.

*Affirmed.*

RAMSEY, JUDGE.—If the case of McAvoy v. State, 41 Texas Crim. Rep., 56 (and many later cases), is to be followed, the decision in this case is correct. My own judgment is that the correct rule is laid down in the dissenting opinion in Hardin v. State, 39 Texas Crim. Rep., 426, and in the opinion on rehearing in Croomes v. State, 40 Texas Crim. Rep., 672, both by Judge Henderson. The rule laid down in the McAvoy case has since been uniformly followed and has been treated as the settled rule of the court. It does not occur to me that it is a correct rule. I reluctantly agree to an affirmance of the judgment out of respect to the former holding of this court, and because of my indisposition to break down public confidence in the uniformity of our decisions. Besides, the rule enforced by the decision of my brother Brooks does make for the protection and safety of the young girls of our country.

DAVIDSON, PRESIDING JUDGE.—As Judge Ramsey's views affirm the judgment I do not dissent, though I am still of opinion the decision in the Hardin case is the law.

### ON REHEARING.

#### June 15, 1910.

COBB, SPECIAL JUDGE.—This case is before the court on a second rehearing, the judgment having been affirmed in an opinion by Judge Brooks October 27 last, and rehearing denied without written opinion December 15. Appellant on June 1, 1910, filed his supplemental motion for rehearing and argument wherein the burden of contention is that the evidence is insufficient to establish the offense of assault with intent to rape. Let us see what the facts are, taking the testi-

mony of prosecutrix to be true. She was fourteen years of age August 15, 1908. On June 8 preceding that date she was walking alone from the town of Barksdale to her father's house, about two and one-half miles distant, and stopped at Bort's house, two or three hundred yards from appellant's home. Leaving Bort's she passed Cromeans' place, and had gone about one-half mile beyond it when appellant passed her riding a horse. He had alighted and was standing at a gate through which she desired to pass when the following incident occurred: She asked him to let her pass through the gate. He said to her: "Let me see your cock." She told him she would not do it, and demanded that he let her through the gate. He then said: "Let me fuck you." She said she would not and tried to get through the gate. He caught her hand. She jerked loose; he caught her arm; she again jerked loose and ran back down the road towards Barksdale, and saw him no more that day. He did not follow her. Appellant's parents and three sisters and himself lived near Barksdale on a public road, which runs in front of their door, and the gate mentioned by prosecutrix is about three-quarters of a mile from their residence. Appellant was sixteen years old August 17, 1909.

There has been much contrariety of opinion among the judges of this court as to whether or not an assault, if it can be so called, made on a girl not fifteen years old with her consent, and with the intent to obtain carnal knowledge of her person with her consent, is an assault with intent to rape, and it appears futile to undertake a reconciliation of the conflict. However, we believe it safe to lay down as law the proposition following, and if it seems to be out of harmony with what has been the prevailing doctrine in the court, we will attempt to show its soundness, viz.: Solicitation accompanied by the expectation of consent and laying on of hands without the use of such force as indicates a purpose to obtain intercourse at the very time, does not amount to assault with intent to commit rape on a girl under fifteen years of age. Rape on a girl is with or without her consent, and with or without the use of force, and an indictment for such offense need not allege force (but if force is alleged it must be proved). Nonconsent and force are essential in rape of a woman. Mere carnal knowledge of a girl not yet fifteen years of age is rape. This has been the law since 1856, with the exception that the age of consent (so called) was formerly ten years, while the statute defining an assault to rape has remained unchanged. "If any person shall assault a woman with intent to commit the offense of rape he shall be punished," etc., and the general provision, "An assault to commit any other offense is constituted by the existence of the facts which bring it within the definition of an assault coupled with an intention to commit such other offense." Article 611. The attempt, by means adequate, to use any unlawful violence upon the person of another with intent to injure him is an

assault, and among the injuries so intended may be a sense of shame. The word "woman" includes a female of any age. Penal Code, article 21. The indictment in Hardin's case charged assault with intent to commit rape by attempting by force to have carnal knowledge of a female under the age of fifteen years. The facts are not given, but the allegations were held insufficient in an opinion by Judge Hurt, who therein admirably displayed the capacities for reason and deduction that contributed so largely to his great fame as a jurist, and his conclusion can not be impeached if his premises be allowed. If he is correct in his premises, viz.: that the statute punishing only the consummated act of intercourse with a female not fifteen years old had with her consent and not in express terms prescribing an attempt by force to have carnal knowledge of her, she consenting, is his conclusion that therefore it is no offense to use upon her any measure of force short of the completed act, she not objecting, a proper conclusion? He refers to article 608 of the Penal Code: "If any person shall assault a woman with intent," etc., and article 611. Then propounds the question: "Is there an assault in attempting to have carnal knowledge of a female under the age of 15 years, she consenting, the attempt being of such a character as to constitute an assault, she not consenting?" It is unnecessary to further quote from the opinion as the entire profession is familiar with it.

Since it is rape to have carnal knowledge of a woman by force, and of a girl under fifteen by or without force, and since the word "woman" includes all females, the child must be embraced in the definition of assault to commit rape in article 608. It being an offense to commit an assault with intent to commit another offense, it is pertinent to inquire the meaning of the word "assault." It is clearly an attempt to commit unlawful violence with intent to injure. What is unlawful violence? Any violence except that permitted by law. Penal Code, article 490. Consent of the party assaulted is not among those enumerated in said article as permitted by law. How is the injury to be effected, and by what means is the intent discovered? The statute answers these questions, saying if the injury be caused by violence to the person, the intent to injure is presumed. Is it not violence to the person of a female to have intercourse with her? Undoubtedly it is, without her consent, and unlawful violence. Can not the statute make it unlawful violence even if with her consent, she being a child? The child is not free to do as she will or submit to what she may choose when the statute forbids the doing and the submitting. If she by her consent is made the object of the violence the law denounces, can her consent set at naught or make void the law? Though an assault is an offense against the person, and so denominated in our Code, it is none the less an offense against the State, and the person can not waive the right of the State, and the assent of the person assaulted is not one

of the exceptions to the statutory rule that violence upon the person is unlawful. If one consented to be killed or assaulted with a deadly weapon, no one would contend that such consent would be a defense against the murder or assault. *Volunti non fit injuria* is not a maxim of the criminal law. "Private persons can not license crimes, and it is no excuse for the wrongdoer that he has anybody's permission." 1 Bish. New Crim. Law, sec. 256. If the girl's assent to the whole or completed act is no defense, how can her consent to any part of it which, with her nonconsent, would be an offense, excuse the offender? To say that the law condemns only the completed act is, it seems to us, to misread the definitions of assault and assault to rape given in the statute. Rape is the carnal knowledge of any female forbidden by law, not classed as incest, seduction, adultery or fornication. An assault is the attempted use of violence forbidden by law, and if coupled with an immediate intent to have or obtain present carnal intercourse forbidden by law, is assault to rape. In Judge Henderson's dissent in the Hardin case he says: "In assault with intent to rape the same character of force must be used as is used in the crime of rape." What is the character of force used in the crime of rape where force is a necessary ingredient of the offense, and how is the force related to the accomplishment of the rape? As we understand, it is that by which the dissenting woman is subjected to and put under the power of the assaulting man so that he is able, notwithstanding her opposition to accomplish the ultimate design. If the rape be of the kind that may be committed without force, then must the party before he should be deemed guilty (acting by the consent of the child, whose consent in law does not excuse him), have put the female, through means of the assault, in that attitude and position necessary to the accomplishment of the act? We think Judge Henderson concedes too much if he means to speak of assault on a child in saying: "This force must be applicable to an assault and battery, and such as might reasonably be *supposed sufficient* to *overcome resistance,*" for no resistance at all, but rather consent is the subject of discussion. We can not think that that portion of article 528 relating to rape on the child is referred to in article 634 defining force. Such construction of the article as would apply any degree of force (of course, we do not mean the mere force used in copulation), to rape on a child makes it conflict with the article that makes it rape of a child to obtain carnal knowledge of her without the use of force. Such rape is without force and not merely without consent. It is utterly immaterial that she consent, and if she consent and there be no force, it is yet rape. The child being embraced in the word "woman" in article 608, and unlawful violence and injury being done upon her in making the assault, her consent can not take away the wrong. Any touching of the person without right, intending thereby to injure, if thereby the slightest injury be committed, is an assault, and consent of the party is no

defense. In Croomes v. State, 40 Texas Crim. Rep., 672, 51 S. W. Rep., 924, the court sustained the conviction for assault to rape a small child. There was actual attempt to penetrate. All the mere preliminary and preparatory acts and doings had been accomplished. Judge Brooks in dealing with the objections to the charge, to wit: that it did not instruct that there must have been an intention in the mind of defendant to 'use whatever force might be necessary to overcome resistance, and that there must be force, cites the statute defining rape and assault to rape, and notes the dissenting opinion in the Hardin case, and proceeds to say, among other things:

"To say that the Legislature of Texas would hang a man for the consummated act of rape, and yet not desire to punish him at all for assault with intent to rape under any contingencies, is a proposition to which we can not agree. Then, if the Legislature did not intend such a construction, we feel constrained, if the language of the statutes is susceptible of a rational, sensible and reasonable construction that will give validity, strength, and force to every phase of the law, that that construction should be adopted. 'Where the intent of the Legislature and the object and purpose of a law are plainly apparent and such manifest intent and purpose are not inconsistent with, or outside of the terms of the law, it is not allowable to permit the intent and purpose to be defeated merely because not defined and declared in the most complete and accurate language. It is generally true that where words used in a statute are clear and unambiguous, there is no room left for construction; but when it is plainly perceivable that a particular intention, though not precisely expressed, must have been in the mind of the legislator, that intention will be enforced and carried out, and made to control the strict letter.' Black, Interp. Laws, p. 73. 'No statute is written, so to speak, upon a blank in the institutions of society. No such blank exists or can exist. . . . In every case the statute is a thread of woof woven into a warp which before existed. It is never to be contemplated as a thing alone, but always as a part of a harmonious whole. . . . A new statutory provision cast into a body of written and unwritten laws is not altogether unlike a drop of coloring matter to a pail of water. Not so fully, yet to a considerable extent, it changes the hue of the whole body; and how far and where it works the change can be seen only by him who comprehends the relations of the parts, and discerns how each particle acts upon and governs and is governed by the others. Now, it is always presumed that the Legislature does not intend to be inconsistent with itself, that it does not intend to make unnecessary changes in the existing laws and that statutes are not to be repealed by implication. Hence, arises the rule that in case of any doubt or ambiguity a statute is to be so construed as to be consistent with itself throughout its extent, and so as to harmonize with the other laws relating to the same or kindred matters.' Id., p. 60. And

again: 'Every statute is to be construed with reference to its intended scope and the purpose of the Legislature in enacting it; and where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act and carry out the purpose of the statute.' Id., p. 56. And Mr. Endlich, in his work on the Interpretation of Statutes (page 33), says: 'But it is another elementary rule that a thing which is within the letter of a statute is not within the statute unless it be also within the meaning of the Legislature; and the words, if sufficiently flexible, must be construed in the sense which, if less correct grammatically, is more in harmony with that meaning. Language is rarely so free from ambiguity as to be incapable of being used in more than one sense, and to adhere rigidly to its literal and primary meaning in all cases would be to miss its real meaning in many. If a literal meaning had been given to the laws which forbade a layman to lay hands on a priest, and punished all who drew blood in the street, the layman who wounded a priest with a weapon would not have fallen within the prohibition, and the surgeon who bled a person in the street to save his life, would have been liable to punishment.' Mr. Sutherland says: 'Words and clauses in different parts of a statute must be read in a sense which harmonizes with the subject matter and general purpose of the statute. No clearer statement has been or can be made of the law as to the dominating influence of the intention of a statute in the construction of all its parts than that which is found in Kent's Commentaries: 'In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms, and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion.' Suth. St. Const., p. 219.''

This case is followed and extended, as we think, too far, in McAvoy v. State, 41 Texas Crim. Rep., 56, 51 S. W. Rep., 928. It is there laid down that the slightest touching of the person with the *ulterior* purpose and intent at the time to force his male organ into the female organ would constitute an assault with intent to rape. Later on we will endeavor to explain the objection to the words above quoted. In the light of the above cases and others, and the best study we have been able to make of the matter, we think it safe to hold as law that if a person put his hand upon a girl and at the time intend instantly and without suspension of action and without waiting to ascertain whether or not she would consent to then and there place her in such attitude as that the final act could be performed upon her, whether the purpose were to put her in such attitude by his force alone or by her free cooperation and

consent, such person has gone far enough to render him guilty of the offense of assault to commit rape. In Croomes, McAvoy and all other cases examined by us the party had gone thus far and farther.

Now, what does this prosecutrix say? "He asked me to show my privates; invited me to sexual intercourse. I refused in succession both of his proposals. Then he placed his hand on mine, and when I jerked it away he put his hand upon my arm, and I jerked that away, and departed from him." We think, notwithstanding appellant's denial, that he desired intercourse with - prosecutrix, and it may reasonably be supposed he expected his request would find favor. Up to this point, this stage of the transaction, surely he was not guilty of assault to rape, however great his desire or flattering his hopes. She turns away and would leave him. He takes hold of her hand. No further word is spoken. With what intent did he lay hold upon her hand? Was it that he might detain her and make further solicitation? Was it that he might use force upon her and thereby accomplish his desire against her will? We think the last suggestion is repudiated by the facts. If he had designed force, surely he would not have desisted so readily. Clearly he had no purpose to overpower her by the use of such force, as he deemed her incapable of resisting. Did he mean to compel her to remain that he might persuade her consent? If such were the case, his ulterior purpose was intercourse with her consent, yet if he had no purpose to have intercourse until she should have consented, and no purpose of using any means but words to induce her consent, her detention was yet but a means to an end, that is to say, the end of obtaining her consent, if so be she would consent. It is not an offense to place one's hand upon the child. It is not an assault with intent to rape if the design be merely to obtain her consent. There must be added to that, to say the least, a present existing purpose to now realize the fruit of the consent. We do not believe the expression in McAvoy's case: "that the slightest touching of the person with the ulterior purpose," etc., is exact law. There must be a present purpose to immediately use that kind of force that is necessary even where the girl consents to place her in the attitude in which the act may be performed. We do not mean that the whole process of placing her in that position must necessarily be performed, but that at least some part of it must be. The touching and taking hold of her must be as a means to an end, that is, to the end of, at least, beginning the placing of her in the attitude necessary and not merely a decent placing of the hand upon her hand or arm, while there exists in the mind no more than a purpose to persuade her to place herself or allow herself to be placed in the condition necessary for the operation. We do not understand that it is an assault to rape if one forcibly detain a girl and compel her to hear solicitations to have intercourse at a time in the future, and we think more than mere detention, more than a decent laying on of the hands, some approach

at least towards preparation for the ultimate act, something showing with reasonable certainty that intercourse is the immediate design to be now effected as the outcome of an act now begun. However reprehensible and immoral the solicitation of the chastity of a young girl may be, there is yet no statute making it an offense, and when the facts, whether consisting in words alone or in words joined together with acts, go no further than solicitation or no further than the obtaining of consent, the offense is not made out. Suppose the girl consents to meet the boy within an hour or within five minutes and yield her body to his desire? Suppose that had this girl remained, being detained by his grasp on her hand, she would have consented? There would have yet been no crime. Obtaining her consent by whatever art or persuasion was but a preliminary to the act and he would not be guilty if having obtained her consent he has meanwhile abandoned his intent. An assault to commit some other crime must be an assault that is intended to be or in its nature is the procuring or instrumental means of accomplishing or carrying out the completed act. If, as we have seen, her consent to the ultimate act nor yet her consent to the act by which the final purpose is expected to be gained (and we mean by that the actual preparation for the act of intercourse) is no defense, the handling of a girl in a way of preparation for immediate copulation is an offense, consent or no consent on her part, but the mere taking of her hand though preceded by solicitation of intercourse, and though resulting in her consent to have intercourse, would not be an assault to commit rape, stopping at that point. We are dealing, of course, with a case of consent. What might be the inference from taking a girl by the hand where the facts indicated the purpose of forcing her is, under the statute and according to the authorities (universal experience), a matter dependent on all the surrounding conditions. In Hudson v. State, 49 Texas Crim. Rep., 24, 90 S. W. Rep., 177, occurs this expression: "There must be sufficient force used in connection with other circumstances of the case to establish beyond reasonable doubt the purpose of appellant to have carnal intercourse with the child." And we would add "at the very time." We do not think that the mere holding of the hand of a girl is a using upon her such physical force as establishes the purpose of appellant to have carnal intercourse with her immediately. If that was so with reference to a girl with whom intercourse is forbidden, whether she consented or not, why wouldn't it be so with reference to a woman? Is the mere fact that a male person takes a female by the hand and solicits her favor proof that he intends to ravish her if she refuses, or that he intends to have connection with her conditioned upon her consent before he has had time to persuade her to consent? There must either be the purpose of forcing her or persuading her, and we think it would be an extreme view to say that merely taking her hand indicated either that he was going to force her or that intend-

ing to persuade her he was too eager to wait until he could persuade her. We do not intend to be understood as approving the Hardin case, nor to go to the extent indicated in the excerpt from the McAvoy case, but to hold this much: That if one take hold of a child under fifteen years of age and handle her in such manner as under the circumstances of the particular case demonstrates a present intent to at once so subject her to his power, she consenting or not, as that he may now accomplish the act of intercourse, he would be guilty of the offense, but if, as we view the facts in the case, he has gone no further than placing his hand upon her with the probable, and we think you might say the evident, intent to detain her and make further solicitation, notwithstanding her refusal, yet having in his mind a hope that if she could be induced to remain he might persuade her, we say, going no further than this, the appellant would not be guilty of assault to rape. Of course, we recognize the province of jurors to find facts, but we understand that jurors are not authorized to deduce from the given or admitted state of facts the more unfavorable deduction, unless the favorable deduction is excluded as being unreasonable, and we do not think the jury were warranted in attributing to the appellant the present intent to then and at that very time have intercourse with the prosecutrix. We hold that the evidence, taking all the circumstances, the age of the parties, the surroundings, the meagerness of the interview, the few words, the slight act of touching, does not justify the verdict. We do not intend to be understood by anything in the foregoing utterances as holding that nothing short of an indecent handling of a child would be sufficient, when coupled with an intent to have carnal knowledge of her, to constitute or show an assault to rape, but do think and do hold that some act that can be fairly, according to human experiences, characterized as having an immediate relation to and preparation or the bringing about of a condition under which intercourse could be accomplished, must be shown by the proof before guilt ought to be inferred, otherwise a mere touching of the person of a woman with a lascivious purpose (inasmuch as in such case there is an intent based on condition either of consent or force to have carnal knowledge) would be sufficient to constitute the offense.

To the extent that the Hardin case is inconsistent with the views here expressed, it is disapproved, and the doctrine of the Croomes case is reaffirmed, while the holding in the McAvoy case is limited as herein indicated.

The motion for rehearing is granted, the affirmance set aside, and the judgment is now reversed and the cause is remanded.

*Reversed and remanded.*

DAVIDSON, PRESIDING JUDGE.—I agree to the reversal, but not all the reasoning of the opinion.