CHARLEY ADAMS v. THE STATE.

No. 15523. Delivered November 2, 1932.
State's Rehearing Denied November 23, 1932.
Reported in 54 S. W. (2d) 123.

The opinion states the case.

*Moore & Wilson,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to rape; the punishment, confinement in the penitentiary for fifty years.

In the count of the indictment, under which appellant was convicted, it is charged that the appellant "did then and there unlawfully in and upon Willie Mae Gentry, a woman, who was not then and there the wife of the said Charley Adams, make an assault, with the intent then and there to commit the offense of rape upon the said Willie Mae Gentry by then and there, without the consent of the said Willie Mae Gentry, attempting by force, threats and fraud to have carnal knowledge of her, the said Willie Mae Gentry."

Appellant operated a second-hand car lot in Amarillo. According to the testimony of the state, appellant was sitting in an automobile on his lot when prosecutrix, Willie Mae Gentry, who was a girl 12 years of age, accompanied by Gwyndoline Puett, a girl of about the same age, approached. Appellant spoke to the girls and they stopped to talk to him. Getting into appellant's car, they carried on a conversation with him for some little time. Appellant, in the meantime, bought them some candy. Finally, appellant volunteered to take prosecutrix and her companion home and they left the lot in appellant's car. Instead of taking them home, appellant drove out of town. According to the testimony of the two girls, prior to leaving the car lot, appellant had attempted to place his hand under prosecutrix's dress. After leaving town appellant continued his unwelcome attentions. Touching the alleged assault, prosecutrix testified, in substance, that appellant placed her hand on his male organ; that she protested; that appellant got out of the car, leaving Gwyndoline Puett in the car, and came to the side of the car near her (prosecutrix); that appellant tried to pull her bloomers down; that at the time appellant's pants were unbuttoned and his male organ exposed; that appel-

lant tried to get between her legs. At this point we quote from the testimony of prosecutrix, on direct examination, as follows:

"As to what Gwyndoline and I were doing at that time— well, we just kept scooting over and tried to keep him from it, and couldn't. I was inside of the car. He was inside of the car, too. He had gotten in on the side I was on around on the right side of the car. I stated that he got between my legs. The defendant, Charley Adams, at that time had his privates out. I felt his privates between by legs. As to what Gwyndoline Puett and I did to keep the defendant Charley Adams from doing what I have told this jury about out there in the country —well, we were fighting and trying to keep him from it. As to whether I consented for the defendant, Charley Adams, to do any of the things I have told the jury about that he did out there in the country—well, I don't know just what you mean. I don't know what 'consent' is. I did not agree with him that he could do to me the things I have told the jury he did do. As to what I said or did to him there—well, he tried to put his privates between my legs and I kept fighting, and he tried to Gwyndoline and she kept fighting. When I was fighting I was scratching him and pushing him back. As to what the other girl and I said to Mr. Adams while this was going on—well, I told him if he didn't leave us alone I would tell my mother when we got home, and he told us not to tell. We told him if he didn't leave us alone we were going to tell our mothers, and he told us not to tell anybody, and not to tell those jokes that he told. I stated that the defendant left me and went over to Gwyndoline. He came back to me again after he had tried Gwyndoline. As to what he did the second time—well, he just tried the same thing that he tried the first time. When he was over there the second time we were still fighting and pushing him and scratching him. We were both fighting at the same time. While we were out there in this car, and during the time these events took place I have told the jury about, I saw an automobile coming. This automobile did not come up there where we were; it turned down another road. I continued to fight and push until the defendant quit. As to what I did after the defendant quit doing the things I have told the jury about —well, we told him if he didn't leave us alone we would tell our mother as soon as we got home, and he left us alone, and started on back to town."

Prosecutrix testified on cross-examination that appellant took hold of her at the time of the alleged assault and she hit him; that she was fighting appellant to keep him away; that

appellant held her hand;. that she and her companion fought appellant at the same time; that neither she nor her companion tried to get out of the car; that neither her clothes nor those of her companion were torn in any way; that she was not hurt in any way; that she had the print of appellant's hand on her left leg; that appellant did not choke or hit her or Gwyndoline. She said: "As to what caused him to quit—well, we just told him if he did not leave us alone we was going to tell our mothers. When we told him that he quit. I told him if he did not quit I was going to tell my mother. As to what he said then— well, he didn't say nothing; he just started on back. The car was stopped then. The motor was not running. He just turned around and started the car up and came on back."

The testimony of Gwyndoline Puett was substantially the same as that of prosecutrix.

Appellant did not testify in his own behalf, but introduced witnesses who testified that appellant was at another and different place when the offense was alleged to have been committed. The testimony of appellant's witnesses to the effect that his general reputation for being peaceable and law-abiding was good was uncontroverted.

We are constrained to sustain appellant's contention that the evidence is insufficient to support a conviction for assault to rape by the use of force. In an indictment for assault to commit rape upon a female under the age of eighteen years, it is not necessary to charge that force was used. Schroeder v. State, 92 Texas Crim. Rep., 7, 241 S. W., 169. However, the count of the indictment under which appellant was convicted charged an assault with intent to commit rape by force, and without the consent of prosecutrix. Hence, in order to sustain a conviction, the allegation of force charged in the indictment was required to be proved. In Morgan v. State (Texas Crim. App.), 50 S. W., 718, the court said: "The indictment is in two counts. Both counts charge an assault with intent to commit rape by force, and without the consent of the prosecutrix. The fact that the prosecutrix is alleged to be under the age of 15 years thus becomes immaterial, for, in any event, in order to sustain a conviction, the allegation of force charged in the indictment was required to be proved. The court, in its charge, as seen above, presented a case of rape without force upon the prosecutrix, with the intent to have carnal knowledge of her, she being at the time under the age of 15 years, and not the wife of defendant. This is not the case presented in the indictment, for, as we have seen under it, the state could only pro-

cure a conviction by the use of force, and against the consent of the female."

See, also, Schroeder v. State, supra.

Under the charge contained in the indictment, the state was required to prove beyond a reasonable doubt not only that appellant made an assault on prosecutrix, but that he intended to gratify his passion on her person, and that he intended to do so at all events, notwithstanding any resistance on her part. Vinsen v. State, 102 Texas Crim. Rep., 235, 277 S. W., 644, and authorities cited; Pierce v. State, 109 Texas Crim. Rep., 461, 5 S. W. (2d) 517. There was no fact or circumstance that caused appellant to desist except his own volition. The force described was not, in our opinion, as great as that used in Vinsen v. State, supra. Under the circumstances reflected by the record, we are driven to the conclusion, that the conduct and acts of appellant, measured by the rules of law applicable to the charge embraced in the indictment, can not be said to show beyond a reasonable doubt that appellant intended to gratify his passion on the person of prosecutrix, and that he intended to do so at all events, notwithstanding any resistance on her part. This would be necessary where the charge is assault with intent to rape by force.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—A consideration of the state's motion for rehearing leaves us of the opinion that the disposition of the case upon the original hearing should remain the judgment of this court. The motion raises no new question of law but reiterates the facts which we have carefully examined and analyzed as well as the members of the court are able to do so and have appraised them as reflected by the opinion heretofore rendered.

The motion is overruled.

*Overruled.*