DAVIS WILLIAM WEST v. THE STATE.

No. 24014. Delivered April 28, 1948.

*Simpson, Clayton & Fullingim,* of Amarillo, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an assault with intent to commit the crime of rape, and by the jury assessed a penalty of 99 years in prison from which he appeals.

The sufficiency of the testimony alone is challenged in this court, there being no bills of exception brought forward.

There were six counts in the indictment, the conviction being predicated on Count Five thereof, which reads as follows:

"AND THE GRAND JURORS AFORESAID, upon their oaths as aforesaid, in and to said Court at said term thereof, do further present that Davis William West, hereinafter called the defendant, on or about the 30th day of August, A. D., 1947, and anterior to the presentment of this indictment in the County of Potter and State of Texas, in and upon Paula Faye Callihan, a woman, did make an assault, with the intent then and there to commit the offense of rape upon the said Paula Faye Callihan, by then and there, without the consent of the said Paula Faye Callihan, attempting by force, threats and fraud to have carnal knowledge of her, the said Paula Faye Callihan not being the wife of the said defendant."

The facts show that the acts complained of relate to a child, a little girl of ten years of age. She was present in a hospital in the City of Amarillo on August 30, 1947, and under the guise of taking her to see some babies, appellant took her up some flights of stairs into a room on top of the hospital, where there were some beds, and placing her on a bed, began to fondle her, eventually placing his finger in her private parts, evidently making a small tear in the hymen. This pained her and she cried out loud. He placed his hand over her mouth and "told me I had better shut up, or he would kill me." He stayed on top of her awhile and then got up. She ran away and went down the stairs and told some nurses what had occurred. The little girl further testified:

"I don't know whether this man put anything in me or not; it felt like it, but I do not know for sure,—it just felt like something going in me,—that is, felt like something going in my privates.

\* \* \*

"I did not see any knife or gun, or anything of that kind, in the hand of this man, the defendant here, while in that room, or at any time. I was afraid, and he just forced me to go,— that is, he just led me out, having hold of my hand."

Appellant made a written statement relative to this matter, a material part thereof being as follows:

"I then talked to the little girl some more, and told her I was going to take her to look at some babies. We went up several flights of stairs, and then into a room together. I then put her on a bed. After I took her and put her on the bed, I pulled her panties off of one leg, so that they were down at the bottom of her feet. Her dress was up, and I began playing with her with my hands. I put my hands on her privates, and put my finger in her. I did that for about 5 minutes, and then tried to put my penis in her. I was on top of her when I began trying to put it in her, and worked it up and down on top of her for several minutes. She told me I was hurting her, and got up and ran out of the room. After she left the room, I stayed for awhile, and then left myself. From there I went to town to see a show. It was a show about horses. After the show I went into the wash-room to wash my face, and when I was there I noticed a red spot on the front of my pants that *looks* like blood. I knew it was wrong when I played with the little girl and realize now that it was wrong."

Dr. James R. Carroll, a physician, testified that on August 30, 1947, he examined the little girl in question; that she had been crying and was very upset; that her underclothing was lying on the table and it was bloody. She was a normal child for her age, about ten years old. There was dry blood on her vaginal parts and a tear about one-fourth of an inch in her hymen. This examination was made about two hours or more after the incident in question.

The indictment contains six counts: No. 1 being for rape on a female under 18 years of age; No. 2 being for having carnal knowledge of a female under 18 years of age; No. 3 being rape by force, threats and fraud; No. 4 being an attempt to rape a girl under 18 years of age; No. 5 being an assault with the intent to commit the offense of rape upon a woman not the wife

of defendant and by force, threats and fraud, attempting to have carnal knowledge of her (naming the little girl) without her consent; and Count No. 6 charging rape of a female under the age of consent by force, threats and fraud.

The trial court submitted to the jury Counts Nos. 2 and 5, and a conviction was had under Count No. 5, which seems to have followed the indictment in the case of Fowler v. State, 66 Tex. Cr. R. 500, 148 S. W. 576.

As heretofore stated, appellant's attorneys urge the insufficiency of the evidence alone, no bills of exception being found in the record.

We are cited to the case of Adams v. State, 122 Tex. Cr. R. 181, 54 S. W. (2d) 123, as being in point herein. In that case the accused was in company with two twelve-year-old girls, and attempted to indecently fondle them. They both fought with him and finally he abandoned the attempt and let them go. This was held not to evidence that he intended to rape them, and that failing to overcome their resistance, he released them, the assault itself being short of evidencing an intent to overcome all resistance.

In the case of Bartlett v. State, 117 Tex. Cr. R. 468, 38 S. W. (2d) 103, no evidence is shown of any intent to penetrate the child's body. No entry thereof is shown, and much evidence of the probable untruth of her story was present in the record, as well as evidence of a good reputation of the accused, all of which, combined with previous ill-will upon the part of the child's family, caused the State's proof to be held insufficient.

In the case of Lacey v. State, 137 Tex. Cr. R. 87, 127 S. W. (2d) 890, the facts fell short of evidencing an intent to rape, but merely evidenced the gratification of an erotic impulse of a pervert with no effort to penetrate the parts of the child.

In the case of Rutkowski v. State, 137 Tex. Cr. R. 541, 132 S. W. (2d) 880, the facts clearly show only a fondling of the the person of a woman and no effort nor intent to rape her at the time in question.

We are not impressed with the application of these holdings to the facts in the instant case. It is shown herein that appellant penetrated the private parts of this child with his finger and caused her pain, as well as bloodshed, and that he tried to place

his private parts in hers. However, according to the examining physician, no male sperm was found in her body. We think the jury had the right to find from the evidence that appellant assaulted the child with the intent to rape her. He was able to make an entry only with his finger, although he tried to make entry with his private organ.

There is found in the record evidence of force as follows:

"I was afraid, and he just forced me to go,—that is, he just led me out, having hold of my hand."

We have the threats as follows:

"There were two or three beds in the room where he took me, and he laid me down on a bed and took my pants off and got on top of me and went up and down on me, and that hurt me, and I told him that it hurt, and I hollered once, and he put his hand on top of my mouth and told me I had better shut up or he would kill me. I don't know just how long he kept his hand on my mouth. I don't know whether he took his clothes off,——I do know that he didn't take his pants off. I do not know how long he kept me there. Once he got up, and I don't know what he was going to do, but I got a chance to get up, and I got up and ran away, ran downstairs."

Again, she testified:

"While I was up there in that room I said I wanted to go to my mother and daddy, and he just made me be quiet."

It is claimed herein in appellant's brief that the State (1) failed to prove the elements of want of consent as alleged in the indictment; (2) that the State failed to prove the use of force; and (3) that the State failed to prove the specific intent to commit the offense of rape and therefore, had failed to present facts sufficient upon which to base a finding of guilt upon the part of the jury.

We are of the opinion that a lack of consent is shown by the actions of the little girl, as well as by her testimony, and the trial court charged upon the law of circumstantial evidence. We are at a loss to see how otherwise her lack of consent could be evidenced. It was not necessary to have alleged her lack of consent herein. She being under the age of consent, the law took from her the power of giving consent. See Fowler v. State, supra; also Moore v. State, 20 Tex. App. 275.

Nevertheless, since the pleader has seen fit to allege lack of consent, same should be proven, and can be shown by circumstances. We think the quoted portions of the little girl's testimony shows such lack of consent. Again, we think a sufficient amount of force and threats are herein shown to have overcome her childish resistance.

The term "force", as applied to the offense of rape, is defined by Art. 1184, P. C., as follows:

"The definition of 'force' as applicable to assault and battery applies also to rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

The word "threat" is defined in Art. 1185, P. C., as follows:

"The threat must be such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case."

It will be noted that the strength of the force, as well as the threats, takes into consideration the relative strength of the parties and other circumstances of the case. A ten-year-old girl would not be expected to oppose advances such as here present with the strength and effort that would be demanded of an older person. Each case should furnish its own standard only. See Bundren v. State, No. 23,990, recently decided but not yet reported. (Page 45 of this volume.)

Relative to the specific intent with which the assault was made upon the little girl, we think the introduction of his finger into her body and the attempt to place his private organ into hers fully shows with what intent the assault was committed. Evidently on account of her age and size he was unable to finally accomplish his act, such being limited by his inability to do so.

It is contended that the word "woman", contained in the indictment, is not met by the proof that the alleged injured party was a female, a girl. Article 19, P. C., says:

"* * * The word 'man' imports a male person of any age, and 'woman' a female person of any age."

See Cromeans v. State, 59 Tex. Cr. R. 611, 129 S. W. 1129; Schroeder v. State, 92 Tex. Cr. R. 7, 241 S. W. 169.

There was a defense of insanity offered and supported by the testimony of two physicians, both of whom testified that appellant was a sexual pervert and practically incurable; that he had the mental capacity of a ten-year-old child, about a half idiot; that his army record showed that appellant walked around the streets and tried to obtain the company of women whenever possible; that he was a dangerous man; that the Chief of the Army Station Hospital at Camp Grant, Illinois, Captain E. D. Schwade, testified before a board meeting in August, 1941, in substance that appellant was a constitutional psychopathic case, criminalism, but responsible for his acts; that his mental age was about eight years. The local physician then proceeded in his testimony and stated that appellant was a dangerous man, and should be sent to some institution; that he would never overcome his low mentality; that he was "psychopath, the meaning of the word being crazy and a crazy criminal; that he is a sexual pervert; they do anything; they will kill a woman if she refuses, or a child; he is crazy all the time and a dangerous individual." A further physician testified for appellant substantially the same as the one just above quoted. He stated that appellant was so mentally deranged that he cannot determine the consequences of his acts; that he was born that way cannot be cured, but he should be restrained; that he is not responsible for what he does. Appellant knew what he was doing with the little girl and knew it was wrong. He did not know the consequences of his act completely, but did know it would not be tolerated by society.

The State then utilized a further physician who testified that after an examination of appellant, it was his opinion that the man knew right from wrong at the time he performed an act and that he knew it was wrong to thus assault this girl; that his acts were premeditated. The State also offered two lay witnesses who testified as to the sanity of the appellant, each denominating him as a sane person.

Under a proper charge the trial court submitted this defense of insanity and instructed the jury to acquit appellant on such ground if they believed him to be insane.

The facts herein seem to show a depraved condition of appellant's mind relative to sexual matters and that he is a menace to society. While the verdict may seem a harsh one, yet appellant's own witnesses showed him to be incurable as such a pervert; that he knew his charged act was wrong and intolerable to society. Therefore, we do not feel inclined to say that the verdict

of the jury is excessive, such being within the penalty provided by law.

Finding no error shown, the judgment is affirmed.