## Jesse Cochran v. State

No. 27,527. June 15, 1955
Rehearing Denied October 26, 1955
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) November 30, 1955

*Howze & Howze,* by *Murray J. Howze,* Monahans, and *Hill D. Hudson,* Pecos, for appellant.

*Warren Burnett,* District Attorney, Odessa, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for assault with intent to rape; the punishment, confinement in the penitentiary for a term of fifty years.

The prosecutrix was a young girl six years of age at the time of the alleged offense and seven years old at the time of the trial.

The appellant, who was married and forty years of age, was the uncle of the prosecutrix, having married her father's sister.

It is shown that the alleged offense was committed on an occasion when appellant and his wife made a visit to the home of the prosecutrix' parents in the city of Odessa.

The seven-year-old prosecutrix testified that appellant, her uncle by marriage, on occasions visited at her home and "bothered her" several times.

Referring to the visit here in question about which she had talked to the district attorney, the prosecutrix testified that she went into a storeroom with appellant, though she did not want to go. When she asked why they were going there appellant said, "I will show you"; that it was in the daytime; that when they got in the storeroom appellant pulled down his pants, held her hands and took her clothes off and pulled her down on top of him on an old mattress; that she did not want to get on top of him; that she saw his private parts and he played with hers.

She testified then "he stuck it in mine" while he was down and had her on top of him; that it hurt, and she cried to herself, but he would not let her cry because he was afraid her grandmother, whose apartment adjoined the storeroom, would hear her; that he said he would whip her "with a thorny stick off of the rose bush;" that he actually put his private parts against hers and it "hurt bad."

She further testified that appellant got on top, of her, "put his arms around my neck and held my hips up" and made her hold onto his shoulders and while on top of her, "Well, he stuck his in mine too, again" and it hurt; that she wanted to cry, but again he would not let her; that he finally let her up and told her that if she told on him "He said he would stick a cigarette in my eye," and she was afraid of him.

On cross-examination the record shows the following questions and answers of the prosecutrix:

"Q. You say when he got you down that he put his private parts against yours? A. Yes.

"Q. I believe you said 'He stuck it in mine,' is that right? A. Yes.

"Q. Now, that afternoon after this happened and after your father came and told Jesse he had to go to the bank — A. Yes.

"Q. And that he would be back, did Jesse and Ruby leave then, or did they stay around a little while? A. Mary and Aunt Ruby and Jesse, and me and my cousin went uptown, and he did it up there too." . . .

"Q. Did you get some ice cream? A. No. He promised me a watch and ice cream, and I haven't got it yet."

Also on cross-examination the prosecutrix testified that she and appellant stayed in the storeroom "about four hours."

On re-direct examination the child stated that it was after they left the storeroom and while they were in the car that appellant "said he would buy me a watch and ice cream if I would do that."

The prosecutrix' father testified that on the day of appellant's visit to his home, after they had dinner, he went out the back and saw his daughter (the prosecutrix) and appellant in the wash house; that as he walked up he looked through a window and saw appellant with his pants down, and when appellant observed him he "jumped behind the door and pulled his pants up and said he was putting his shirt tail in."

The prosecutrix' mother testified that on the day of appellant's visit to her home he, on two occasions, went outside with the prosecutrix, the first time in the morning when appellant asked the little girl to go outside so he would swing her, and again after eating lunch, the prosecutrix went outside and appellant followed her. She further testified that after appellant and his wife left around 4:30 o'clock that afternoon, she questioned her daughter about being molested; that after her daughter told her about being molested, she examined her private parts and found that they were bruised, and that night she called a doctor and later took her daughter to him for examination.

The evidence further shows that the prosecutrix was examined by the doctor some five days after the day of the alleged assault and that the examination of her private parts revealed some bloody discharge and evidence of a mild injury or trauma.

Appellant, as a witness in his own behalf, denied that he at any time molested or assaulted the prosecutrix and denied that he went outside of the house with the child during the morning after he and his wife arrived. Appellant explained his presence

in the storeroom by testifying that he went in to get a rag to wipe some rust off his hands and that he and the prosecutrix were alone in the storeroom together for not over a minute that afternoon, which was when she came in the wash house ahead of her father.

Appellant further testified that some men were working in an alley near the storeroom and that the prosecutrix' grandmother was in her apartment when he went into the storeroom and that the apartment was separated from the storeroom by a wall through which a conversation could be heard.

Appellant's wife testified that on the day of the visit, her husband and the prosecutrix were not out of her presence from the time of their arrival in the morning until the noon meal; that she observed nothing unusual during the day and that she did not see or hear anything during the day with reference to appellant and the prosecutrix that aroused her suspicion.

We agree with the appellant's contention that although it is not necessary, in prosecutions for assault with intent to rape a female under the age of consent, to allege in the indictment that the offense was committed without the consent of the female and by the use of force, threats and fraud, when such allegations are made, the state is required to make proof thereof in order to sustain a conviction. Adams v. State, 122 Texas Cr. R. 181, 54 S.W. 2d 123; West v. State, 152 Texas Cr. R. 9, 211 S.W. 2d 200.

We shall, therefore, examine the testimony of the prosecutrix to determine whether it is sufficient to show the offense to have been committed without her consent and by the use of force, threats and fraud.

On the question of consent, the prosecutrix testified that she did not want to go into the storeroom, that she did not want to get on top of appellant and did not want to do "all of that." We think this testimony, in view of her tender years, is sufficient to show her lack of consent.

On the question of force used by appellant, the testimony of the prosecutrix shows that after appellant lured her into the storeroom, he held her hands, took her panties off, and pulled her down on top of him, all of which was against her will, wouldn't let her cry, and threatened to whip her if she did, and after appellant got on top of her, he put his arms around her neck, held her hips and made her hold on to his shoulders. We

are of the opinion that this description of the assault upon a six-year-old child shows the use of force in the commission of the assault.

In West v. State, supra, in which the testimony of a ten-year-old girl was held to be sufficient to show the use of force in a prosecution for assault with intent to rape, Judge Graves, speaking for the court, after quoting Article 1184, P.C., which defines the term "force" said:

"It will be noted that the strength of the force, as well as the threats, takes into consideration the relative strength of the parties and other circumstances of the case. A ten-year-old girl would not be expected to oppose advances such as here present with the strength and effort that would be demanded of an older person. Each case should furnish its own standard only."

Appellant contends that the court erred in holding that the prosecutrix was competent to testify and that her testimony does not comport with human experience or with the truth.

It is first insisted that her testimony shows that she did not possess sufficient intellect to relate the transaction with respect to which she was interrogated. Appellant relies upon the fact that she testified in one instance that she and the appellant were in the storeroom for four hours which, under the evidence, would have been an impossible length of time, and to her statement on cross-examination which would indicate that appellant again committed an offense upon her while parked in a car across from the courthouse. Her statement that she and appellant were in the storeroom for four hours does not destroy her testimony or show her lack of intelligence in view of other testimony in the record that she left the house and went outside with appellant shortly after 9:30 o'clock in the morning before the offense is shown to have been committed that afternoon.

The statement of the prosecutrix on cross-examination to the effect that while in the car across from the courthouse "he did it up there too" without further details being shown by the state, or further inquiry being made by appellant's counsel, does not condemn her testimony as being contrary to human experience and unworthy of belief.

We think the record shows that for a seven-year-old child the prosecutrix intelligently related the transaction about which she was interrogated.

Upon being examined on the question of her competency the prosecutrix testified that she understood that she was in court testifying; that when she took the oath she understood she was telling everybody that she would tell the truth; that she understood that it was bad or wrong to tell something that was not true and if she did she would go to the devil. Her testimony shows that she not only knew that the taking of an oath meant to tell the truth, but that it was wrong to tell something that was not true.

We are of the opinion that under the record the prosecutrix was shown to be competent to testify and that the court did not abuse his discretion in permitting her testimony. Hines v. State, 160 Texas Cr. R. 284, 268 S.W. 2d 459.

The prosecutrix appears to have used the term "stuck it in me" as equivalent to "he put his private parts against yours?" A. "Yes." At any rate, it is to be remembered that the charge and conviction here are for assault with intent to rape and not rape, and the transaction upon which the state relied was that in the storeroom and not that in the car.

There is nothing in the record to show that the child was induced to make a false charge against appellant, and no ill feeling or other motive on the part of her parents to have him falsely accused is discovered.

The trial judge and the jury had the opportunity to observe the demeanor of the child and the other witnesses, and the law places upon the jury the responsibility of passing upon their credibility. The verdict should not be set aside by this court if there is sufficient legal evidence to support it.

We have concluded that the evidence is sufficient to support the verdict of the jury which found that appellant made an assault with intent to rape, as charged, and overrule appellant's contention that the testimony of the prosecutrix does not comport with human experience and is unworthy of belief.

The judgment is affirmed.

Opinion approved by the court.

MORRISON, Presiding Judge, (dissenting).

This prosecution rests almost entirely upon the testimony

of the child. I cannot agree to an affirmance of this conviction, because the little girl's account of the transactions does not, as I see it, comport with human experience. Recently, in Botello v. State, 161 Texas Cr. R. 207, 275 S.W. 2d 814, we said, "This type of case gives this Court some of its greatest concern and receives the most careful scrutiny."

The little girl's father came to the storeroom and spoke to the appellant through the window and yet she made no outcry. In fact, she made no outcry at all. The mother secured her information from the child by means of questioning later that day. The appellant had never been in a position of locus parenti to the child, and therefore had no domination over her. The girl testified to an act of intercourse with her in the storeroom and then said, "and he did it up there too," when she and the appellant were left alone together in an automobile across the street from the courthouse in the city of Odessa in the middle of a week-day afternoon. The doctor did not examine the child until five days after the incident is alleged to have occurred, and, of course, he was in no position to testify as to the cause of the mild injury which he found on the child's privates. The child's parents must have entertained some doubt as to the appellant's guilt, because no report was made to law enforcement agencies until five or six days after the child reported the attack to them.

The appellant, 40 years of age, had never before been in trouble and abundantly established his good reputation.

I respectfully enter my dissent.

### ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

Appellant presses upon us his contention that the facts do not warrant this conviction and that we ought not to let it stand because of the insufficiency of the evidence.

We are not unmindful of the seriousness of the question, both from the standpoint of the appellant and of the state. For that reason we re-examined the entire record.

It must be remembered that this is not a case of rape where penetration is necessary to be established in order to constitute such an offense.

Here, the conviction is for assault with intent to rape, the essential elements of which are the assault and the specific intent to commit the crime of rape.

The testimony of the prosecutrix is deemed sufficient, in law, to show those elements. It was the province of the jury to pass upon the credibility of that witness and to weigh her testimony.

The jury saw and observed the witness and accepted her testimony. The trial court also saw and observed the witness, and refused to set aside the conclusion of the jury.

We are not here dealing with the question of an absence of testimony or legal insufficiency but rather with the question presented as to the weakness of testimony.

We remain convinced that the facts are not such as would warrant the overturning of the jury's verdict.

Presiding Judge Morrison remains convinced that the conviction should be reversed for the reasons pointed out in his dissenting opinion.

The motion for rehearing is overruled.