**Bobby James SHIELDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 39516.**

Court of Criminal Appeals of Texas.

April 13, 1966.

Rehearing Denied May 25, 1966.

Charles H. Winston, Odessa, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for assault with intent to rape alleged to have occurred on or about May 25, 1965; the punishment was assessed at twenty-eight years.

The mother testified that the prosecutrix was ten years of age on July 28, 1965, and that the prosecutrix had lived with her until she noticed that the prosecutrix had a discharge; that she took her to a doctor and in June took her to the Health Clinic; and that she later filed charges against the appellant; and the prosecutrix during this time went to live with her father.

The prosecutrix, age ten, testified that the appellant had lived with her mother; that he was at their house about the time school was out in 1965, and while their mother was away he told her and her brother to go outside and they did, and

then he called her back into the house; that appellant told her to lie down on the bed which she did, then he told her to pull down her panties and when she refused the appellant pushed her down on the bed, pulled down her panties and got on top of her, "Then he got his thing out," * * * "out of his breeches," and "he started doing something bad." She further testified as follows:

"Q You told the jury that he pulled his thing out of his breeches, didn't you, R——?

"A Yes, sir.

"Q What did he do with it?

"A He stuck it in me.

"Q Where did he stick it in you?

"A In between my legs.

"Q How do you know he stuck it between your legs?

"A Because I saw it.

"Q You saw it?

"A Yes, sir.

"Q Where did he put it between your legs?

"A In my stuff.

*      *      *      *      *      *

"Q Could you see his thing?

"A Yes, sir.

"Q Did he have his pants down?

"A He had them unzipped.

"Q He had them unzipped?

"A Yes, sir.

"Q What did he do when he got off of you?

"A He told me if I told anybody we would both get in trouble.

*      *      *      *      *      *

"Q Well, did you tell your mamma about it when she came home?

"A No, sir.

"Q Why didn't you tell your mamma about it when she came home?

"A Because I was scared.

"Q Who were you scared of?

"A My mother.

"Q Why were you afraid of your mother?

"A Because I thought she was going to whip me.

*      *      *      *      *      *

"Q You told somebody about it later on, didn't you, Honey?

"A Yes, sir.

"Q Who did you tell about it?

"A My aunt.

"Q Who is your aunt?

"A Aunt I——.

*      *      *      *      *      *

"Q When Bobby James (appellant) did this to you was that before your birthday?

"A Yes, sir.

"Q Was it about the time school was out?

"A Yes, sir."

The aunt of the prosecutrix testified that she noticed that the prosecutrix had a discharge; that in the latter part of June, 1965, she took her to the Health Department for two shots; and that she was given five shots.

The appellant did not testify.

It was stipulated that the appellant was a male person, twenty-one years of age or over. It was further stipulated that the appellant was in jail from June 26, 1965 to July 9, 1965.

It was shown by the records of the Health Department that the prosecutrix on

June 23, 1965, had and was treated for gonorrhea.

Testimony was introduced by the jailer and appellant's mother that they never knew of appellant having or being treated for gonorrhea.

■ It is insisted that the trial court erred in holding that the prosecutrix was competent to testify as a witness.

The examination of the prosecutrix shown in the record reveals that she was ten years of age, that she was in the fourth grade in school; that to swear to tell the truth meant to tell nothing but the truth; that her mother had punished her because she did not mind; and that she understood that she would be punished if she did not tell the truth.

From all the facts and circumstances as shown by the record, it is concluded that the trial court did not abuse its discretion in permitting her to testify. Hines v. State, 160 Tex.Cr.R. 284, 268 S.W.2d 459; Cochran v. State, 162 Tex.Cr.R. 253, 283 S.W.2d 947.

The appellant contends that the trial court erred in permitting the mother of the prosecutrix to testify on the ground that she was the common law wife of the appellant.

■ The mother, age 24, testified that she had seven children, and had always used her maiden name; that she had lived with three different men and had children with six different fathers; that she lived with appellant about one and one-half years; that they never intended to get married at first but after about six months they talked about marrying, and then had an argument and never did; that she never considered herself his wife, although he listed her in his insurance policy and had the utility bills in his name; that no marriage ceremony was performed and no divorce had between them, and neither ever held the other out as man and wife, and she never considered herself married to the appellant, and had lived with another man for several months after she had lived with the appellant; that while working during this time she received all pay checks in her maiden name.

No error is shown by the trial court in permitting the mother of the prosecutrix to testify.

In submitting the case, the court charged the jury that if they had a reasonable doubt of whether the appellant had the specific intent to have carnal knowledge of the prosecutrix to find him not guilty of assault with intent to rape.

The trial court also submitted the law applicable to aggravated assault to the jury.

■ The evidence is sufficient to warrant the finding that the appellant had the specific intent to have carnal knowledge of the prosecutrix.

The judgment is affirmed.

Opinion approved by the court.