### J. P. HICKEY v. THE STATE.

No. 16684.   Delivered May 23, 1934.

. . .

The opinion states the case.

*Hill D. Hudson,* of Pecos, for appellant.

*Richard L. Toll,* County Attorney, and *William L. Kerr,* District Attorney, both of Pecos, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of rape, and his punishment assessed at confinement in the state penitentiary for a term of five years.

The prosecutrix testified that the appellant by force and violence committed an act of rape upon her. The appellant denied in toto the act of carnal intercourse and denied having made any assault upon her.

By bill of exception No. 1 the appellant complains of the action of the trial court in permitting the district attorney to introduce in evidence the blood stained and torn bloomers worn by the prosecutrix at the time of the alleged occurrence and which were in the same condition as they were at the time she returned from the automobile ride immediately after the alleged offense. While it is true that ordinarily bloody clothing are not admissible in evidence unless they tend, even though remotely, to illustrate or elucidate any issue or theory of the case on trial, in the case of Salazar v. State, 116 S. W., 819, this court, speaking through Judge Davidson, said: "Whenever the condition or appearance of clothing worn by the party assaulted becomes material to illustrate any fact in the case, it is proper to introduce such clothing before the jury." In the case under consideration the appellant not only denied the act of in-

tercourse but he denied that there was any struggle or any violence employed by him, directly contradicting the prosecutrix's version of the entire affair, and therefore the blood stained and torn clothing tended to corroborate the prosecutrix, who testified that she resisted the appellant's advances and that she struggled with the appellant in an endeavor to prevent him from committing the alleged rape, and in addition she testified that he did not pull her clothing off of her but just ripped them open. In the case of Sharp v. State, 160 S. W., 369, this court held that the torn clothing of prosecutrix were admissible on the question of force, in which we concur. We therefore overrule the appellant's bill of exception.

By bill of exception No. 2 the appellant complains of the action of the trial court in overruling his objection to the main charge of the court in that the court failed to charge on the law of an assault with intent to rape, and in declining to submit to the jury his requested special charge on said theory. We are of the opinion that the court did not commit any error in this respect as we do not believe that the issue of an assault with intent to commit rape was raised by any testimony. The appellant testified in his own behalf as follows: "I embraced her and kissed her but my hands were never under her bloomers. I felt that sanitary belt. When I got to the sanitary belt she pushed my hand down and said for me not to do that, that I would have to wait until some other time. I quit right there." The prosecutrix testified to a complete act of penetration by the appellant, which the appellant denied in toto. No other witness testified to any events that took place at the time of the alleged act of rape. An assault with intent to rape is thus defined: "If any person shall assault a woman with intent to commit the offense of rape, he shall be punished by confinement in the penitentiary for any term of years not less than two." In the case of Bartlett v. State, 38 S. W. (2d) 103, and also in the case of Cromeans v. State, 129 S. W., 1129, a similar question was before this court and decided adversely to appellant's contention. The facts as testified to by this appellant, and which only could be the basis for the appellant's contention of a charge on the law of an assault with intent to rape, are insufficient to justify a charge thereon. The appellant did not say that he intended to have intercourse with her consent or without her consent, and the court would not be justified in assuming from the appellant's testimony alone a criminal intent on his part unless there were facts and circumstances which justified the same. His testimony was a complete denial of his purpose at the very time

to have carnal knowledge of prosecutrix. In the case of Cromeans v. State, supra, this court said: "Solicitations, accompanied by the expectation of consent, and laying on of hands without the use of such force as indicates a purpose to obtain intercourse at the very time does not amount to an assault with intent to commit rape on a girl under 15 years of age." In the case of Charles v. State, 196 S. W., 179, this court, speaking through Presiding Judge Morrow, said:

"The court's charge fairly presented the issues and was not excepted to. Appellant however requested the court by a special charge to submit the case of assault with intent to rape. The indictment for rape included the offense of an assault with intent to rape, but the court would not be required to give or be justified in submitting to the jury that issue unless the evidence was such as to raise it. An assault with intent to rape involves an assault upon a woman with intent to gratify his passion at all events, notwithstanding resistance on her part, but when the assailant succeeds in accomplishing his purpose assault with intent to rape passes out and it becomes rape. From the appellant's testimony and theory there was no assault made. From the state's testimony and theory the assault was made and the purpose fully accomplished." And in support of the views thus expressed the case of Dusek v. State, 89 S. W., 271 is referred to.

In the case of Vinsen v. State, 277 S. W., 645, this court said: "There is nothing in the record showing any fact or circumstance that caused the appellant to desist in his unwelcome attentions towards prosecutrix, except his own volition." In that case this court held that the evidence was wholly insufficient to warrant a conviction of an assault with intent to rape.

By bill of exception No. 3 the appellant complains of the action of the trial court in overruling his first application for a continuance on the ground of the absence of appellant's wife, who was alleged to be ill and confined to her bed and by whom he expected to prove and would prove, if present, that she had on divers occasions seen the prosecutrix in an inebriated condition and that on such occasions the prosecutrix had related to the witness as true imaginary stories which witness well knew were not true and that prosecutrix is not worthy of belief; that the prosecutrix's reputation for truth and veracity is bad. He further expected to prove by said absent witness that the witness on many occasions witnessed actions on the part of the prosecutrix towards the appellant such as passionate embraces, hugging, kissing and fondling which would belie

the want of consent charged in the indictment; that the witness saw the appellant soon after the alleged rape and that his appearance did not indicate that he had any struggle of any kind; that the witness examined the car in which the alleged rape occurred and the same bore no evidence of any struggle or disturbance; that the prosecutrix made various long motor trips at night with young men unchaperoned and on which much drinking occurred on the part of prosecutrix, and that the father of prosecutrix ran beer joints in the town of Crane; that prosecutrix spent a great deal of her time in and about said place drinking and that her reputation for chastity prior to the alleged offense was bad; that prosecutrix told the witness that she was unchaste prior to the date of the alleged offense.

In his motion for new trial the appellant assigns as error the action of the trial court in overruling the application for continuance, but he fails to support said application or the matters therein urged as a ground for continuance by any supporting affidavit of the absent witness. Section 6, article 543, C. C. P., provides as follows:

"The truth of the first or any subsequent application as well as the merits of the grounds set forth therein and its sufficiency shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. If an application for a continuance be overruled, and defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the application was of a material character, and that the facts set forth in said application were probably true, a new trial should be granted, and the cause continued or postponed to a future day of the same term."

In the case under conisderation no affidavit of Mrs. Hickey was attached to the motion for new trial stating that she would have in fact given the testimony expected from her. As was said by Judge Hawkins in the case of LaFitte v. State, 54 S. W., (2d) 133: "While such an affidavit may not be indispensable, its absence, unless accounted for, which was not done, may be considered by the court, together with the evidence heard upon the trial and the circumstances of the case, in determining whether the claimed absent evidence was probably true." So in the case under consideration, in the absence of the affidavit of Mrs. Hickey it was within the sound discretion of the trial court to either refuse or grant the application. The greater part of the facts which appellant urged he could prove by the absent witness was merely for the purpose of impeaching the prosecutrix, and most of it was immaterial and not relevant to the

issues raised in the case. The fact that the application states that the absent witness would have testified that prosecutrix told her she was of unchaste character seems incredible to us. We cannot conceive how a young girl, even though she was unchaste, who was mixing and mingling with decent people, should deliberately without any cause or justification state to a grown and elderly woman that she was of unchaste character. The application is in such general terms without stating facts that we are forced to the conclusion that the court was justified in determining that the testimony of the absence witness was probably not true, and therefore the court did not commit any error in overruling the application for a continuance.

Bill of exception No. 4 relating to the argument of the district attorney is qualified by the trial court as follows: "At the time the argument complained of was made no objection was made to said argument. As the district attorney was concluding his remarks to the jury an objection was made to a portion of the argument other than as above complained of, whereupon the district attorney in his concluding remarks stated to the jury in substance as follows: 'Disregard everything I may have said in my argument. This man should be tried upon the law and the evidence. Rely upon what you have heard the witnesses say and apply the law as given you in the court's charge. If from the law and the evidence you believe this man guilty of the offense, convict him; otherwise, turn him loose.'" With the bill thus qualified by the court, we perceive no reversible error and the same is in all thing overruled.

By bill of exception No. 5 the appellant complains of the testimony of the witness Chafin to the effect that the defendant tried to borrow a gun from him about 7 P. M. on the day of the alleged offense. The court in his qualification to said bill certifies that this testimony was received without any objection being made thereto and that after the witness had so testified without any objection being made thereto the defendant moved the court to strike the testimony from the record. The motion was sustained and the jury instructed not to consider the same.

By bill of exception No. 6 the appellant complains of the action of the trial court in overruling his motion for new trial on the ground of misconduct of the jury in discussing the absence of defendant's wife from the trial and discussing and considering the testimony of the witness Chafin which was excluded from their consideration by order of the court and because the jury discussed the question of the probability of a pardon and parol and in connection therewith discussed the Hall case, a

murder case recently tried in said court, and discussed the possibility of defendant's friends buying a pardon; that such matters were discussed prior to the time the question of punishment was discussed. Upon the hearing of the motion for new trial the appellant offered evidence in support thereof. Mr. Lambert, one of the jurors, testified that he did not hear any mention of the absence of the defendant's wife from the courthouse; that he remembered the witness W. L. Chafin and that there was some unintentional remark by some one but the foreman immediately arose and reminded them they were not to discuss any evidence they hadn't heard as admitted evidence, and there was no more said about it. The man's name was not even mentioned. Some one asked whether or not the defendant had borrowed a gun prior to 8 o'clock on the evening of June 6 and the foreman arose and said that was not admitted evidence, and it was not discussed. There was some discussion of how quick Jack Hall got out of the penitentiary, but it was after the final vote was taken and while the jury were waiting to be turned loose. The discussion of the Hall case was made while the jury was waiting to be let out. The final vote had already been made and the foreman had signed the verdict. Mr. Havis, one of the jurors who sat in the trial of said case, testified as follows:

"I myself did not say anything about the absence of defendant's wife or her failure to testify in the case. I heard somebody say she was sick. No one commented on the fact that she wasn't here or wasn't here to testify. There was something said about Mr. Chafin's testimony, something was asked about defendant wanting to borrow a gun from him. I don't remember whether or not there was more than one remark made about that. Prior to the time we agreed on a verdict I heard some discussion as to how soon a man would get out of the penitentiary by being pardoned after he was sent to the penitentiary. It is just a general discussion of it. I think the discussion was more with reference to a man getting off on good behavior. There was also something mentioned about Jack Hall and how quick he got out of the penitentiary. I do not remember who made that remark. That was made before we reached the number of years in our verdict. I knew the circumstances in the Jack Hall case. I reached my decision in this case on the law as given me in charge by the court and the evidence I heard on the witness stand. The reference made to the Chafin testimony had no bearing on my action. Those other things did not affect me in arriving at a verdict. The first vote taken by the

jury stood 11 for guilt and one for not guilty. I afterwards came over. I was the man voting not guilty. It is a fact that after that discussion took place my last vote had been for five years suspended sentence. I afterwards changed that vote so as to concur with the other 11 jurors and give Hickey 5 years straight. I did that because I thought the facts justified it. I did not consider the fact that Hall had gotten out in just a little while. I did take into consideration the fact that if he was given 5 years in the penitentiary he would probably get out in less time than that. If you are good you get off so much for good behavior. I give this man 5 years straight time because the law and the evidence justified it."

All the other jurors testified that they had decided the defendant was guilty of the offense charged prior to the time that there was any mention made of the Hall case or any allusion to the testimony of Mr. Chafin and that the same did not in any way influence them in reaching the conclusion as to the appellant's guilt. It is unnecessary to set out at length the testimony as to when these matters were discussed, whether prior to the time that the verdict of guilty was reached or subsequent thereto. The settlement of the conflict of the testimony was a matter for the trial court, and it appears to us that the court decided that issue according to the preponderance of the testimony. Unless an abuse of discretion is shown on the part of the trial court, this court will not reverse the judgment, and in support thereof we refer to the cases of Russell v. State, 6 S. W. (2d) 760, and Williams v. State, 279 S. W., 462.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.